PRESIDENT AND FELLOWS OF MIDDLEBURY COLLEGE ET AL. *v.*
CENTRAL POWER CORPORATION OF VERMONT.

May Term, 1928.

Present: WATSON, C. J., POWERS, MOULTON, and CHASE, JJ., and
THOMPSON, Supr. J.

Opinion filed October 3, 1928.

326

328

*E. W. Lawrence* for the defendant.

*Allen R. Sturtevant* and *Homer L. Skeels* for trustee.

330

*J. Ward Carver,* Attorney General, and *Walter S. Fenton* for the State.

332

MOULTON, J. By his last will and testament Joseph Battell devised to the President and Fellows of Middlebury College certain parcels of wild land. The terms of the devise are found in the third paragraph of the will and are as follows:

"Being impressed with the evils attending the extensive destruction of the original mountain forests of our country, and being mindful of the benefits that will accrue to, and the pleasures that will be enjoyed by the citizens of the State of Vermont and the visitors within her borders, from the preservation of a considerable tract of mountain forest in its virgin and primeval state, and believing that the popularity of Middlebury College will thereby be greatly enhanced, I therefore further give and devise to the President and Fellows of Middlebury College in trust forever......my lot in the town of Ripton, known as the "Gate Lot" containing Five Hundred (500) acres, more or less, that I purchased of the late Albert Whitcomb, also all those portions of the land I purchased of the Whitcomb estate (including the wooded lot of the Miller farm) and of the land I purchased of Uriah Beech, and of the land I purchased of the Ladd estate, and of the land I purchased of Sylvester Fisher, and of one Boyce, and of the Murray lot, so-called, and of my Taylor lot, so-called, and of the land I purchased of S. G. Tisdale, being situated in said Towns of Middlebury and Ripton, as form the wooded banks on both sides of Middlebury River north of the turnpike leading from East Middlebury to Ripton Village. To

have and to hold said lands, with all their appurtenances, to said President and Fellows of Middlebury College and their successors forever. In Trust as a park for the benefit of said Middlebury College and the students thereof, subject to such reasonable rules and regulations as the trustees for the time being of said Middlebury College may make. It is a condition of this devise that said trustees shall, at reasonable times and under reasonable regulations to be fixed by said trustees, allow the citizens of Vermont and visitors within her limits, access to said park and enjoyment of the privileges thereof. And it shall be the duty of said trustees to preserve as far as reasonably may be the forests on said park, and neither to cut nor permit to be cut thereon any trees whatsoever except such as are dead or down and such as it may be necessary to cut in making and repairing needful roads; it being a principal object of this devise to preserve intact said wild lands, especially the Hancock part thereof, as a specimen of the original Vermont forest."

After the decease of Joseph Battell, his will was admitted to probate, his estate duly administered, and by two decrees of the court of probate, the lands described in section three of the will were decreed to the President and Fellows of Middlebury College in trust forever, as a park for the benefit of Middlebury College and students thereof, subject to such reasonable rules and regulations as the trustees for the time being of Middlebury College might make, and subject to the condition that said trustees should at all reasonable times and under reasonable regulations to be fixed by said trustees, allow the citizens of Vermont and visitors within her limits access to said park and enjoyment of the privileges thereof. The decree also defined the duties of the trustees as to the preservation of the forests of the park and the cutting of trees therein, as specified by the will.

Upon the making and entry of the decrees, the President and Fellows of Middlebury College accepted the trust and entered into possession of the premises, and is now, and since the decree has been actually engaged in the exercise of the provisions, powers and duties of the trust; and the park has been opened for the use and benefit of the public in accordance with the provisions of the will, and the citizens of Vermont and

visitors within the borders of the State are now, and since the opening of the park have been, using and enjoying the premises as and for a public park and deriving the benefit and enjoying the pleasures consequent thereon.

The Central Power Corporation of Vermont seeks to condemn a certain part of the Gate Lot, hereinbefore mentioned, and of the parcels of land along the wooded banks of the Middlebury River, and the river itself, for purposes of development of its storage and electrical power project, and to this end has filed its petition to the Public Service Commission of Vermont, which has set a day for hearing upon the same.

All of the foregoing is alleged in the bill of complaint in this case, in which the plaintiffs, the President and Fellows of Middlebury College, and the State of Vermont pray that the defendant, the Central Power Corporation of Vermont, may be enjoined from conducting and prosecuting the condemnation proceedings, or any similar proceedings with respect to the property described, and from taking the property by the exercise of the right of eminent domain. The plaintiffs claim that the premises sought to be condemned are a public park which has been, by the will of Mr. Battell, dedicated to a public use.

The Act of the Legislature of November 1, 1800, incorporating the President and Fellows of Middlebury College, and the entire will of Mr. Battell are made a part of the bill of complaint and are set out in full. Certain provisions in each will be later considered because of their bearing upon the questions before us.

The bill of complaint has been met by a demurrer, the grounds of which are as follows:

1. That the defendant is authorized by law to take the property in question for the purposes alleged in the bill.

2. That the property is not devoted to a public use.

3. That the property is held for the benefit of Middlebury College and the students thereof, subject to such reasonable rules and regulations as the trustees of the College may make, conditioned that said trustees shall at reasonable times and under reasonable regulations allow the citizens of Vermont and visitors within the limits of the State, access thereto and enjoyment of the privileges thereof.

4. That there is no dedication of the property to the use of the public exclusively.

5. That there is no allegation of any special or legal damage resulting or to result to the plaintiffs or either of them, entitling them to the relief prayed for.

6. That if the plaintiffs are entitled to any relief respecting the matters and things set forth in the bill of complaint, they have a plain, adequate, and complete remedy at law.

After hearing, the Chancellor signed a decree overruling the demurrer, taking the bill as confessed, and perpetually enjoining the defendant from further prosecuting the condemnation proceedings. The defendant thereupon appealed.

■ A question is raised as to the power of the plaintiff to hold the lands in trust. The President and Fellows of Middlebury College, is, by its charter (Sec. 1, Act of November 1, 1800), given the power ''to have, take, possess, acquire, purchase or otherwise receive lands, tenaments (sic), hereditaments, goods, chattels or estate,'' and it is said in *Perin* v. *Carey*, 24 How. 465, 16 L. ed. 701, 711:

''The law is that where the corporation has a legal capacity to take real or personal estate, then it may take and hold it upon trust in the same manner and to the same extent as private persons may do. It is true that if the trust be repugnant or inconsistent with the proper purposes for which it was created, that may furnish a good reason why it may not be compelled to execute it. In such a case, the trust itself, being good, will be executed under authority of a court of equity.''

To the same effect is *Vidal* v. *Mayor, etc., of Philadelphia* (the Girard Will Case) 2 How. 125, 11 L. ed. 205, 230, 231.

■ And there is no objection in point of law, to a corporation taking property upon a trust not strictly within the scope of the expressed purposes of its institution, but collateral to them. *Vidal* v. *Mayor, etc., of Philadephia, supra; Stearns* v. *Newport Hospital*, 27 R. I. 309, 62 Atl. 132, 135, 8 Ann. Cas. 1176. We fail to perceive, in the trust as established by the will of Mr. Battell, any repugnancy or inconsistency with the provisions of the charter of the plaintiff corporation.

■ The principal, if not the only, remaining question in this case is whether the lands sought to be condemned are, by virtue of the trust created by the will of Mr. Battell, and accepted by the President and Fellows of Middlebury College, dedicated to a public use, and actually so employed. If they are, they cannot be taken by condemnation proceedings, for it is the well-settled law of this State that property already appropriated to a public use cannot be taken for another public use without legislative authority, either express or implied. *Vermont Hydro-Electric Co.* v. *Dunn et al.,* 95 Vt. 144, 149, 112 Atl. 223, 12 A. L. R. 1495; *Rutland Ry., etc., Co.* v. *Clarendon Power Co.,* 86 Vt. 45, 50, 83 Atl. 332, 334, 44 L. R. A. (N. S.) 1204; *Barre R. R. Co.* v. *M. and W. R. R. Co.,* 61 Vt. 1, 13, 17 Atl. 923, 4 L. R. A. 785, 15 A. S. R. 877.

It is said in *Rutland Ry., etc., Co.* v. *Clarendon Power Co., supra,* that:

"An attempt to give a sufficiently accurate and comprehensive definition of the term 'public use' would be a perilous undertaking. The difficulty, if not the impossibility of formulating such a definition is everywhere recognized."

■ The same opinion points out that it may be that the meaning of the term varies according to its application, and that the "public use" involved in the law of eminent domain is not the "public use" involved in the law of taxation, as was held in *Stiles* v. *Newport,* 76 Vt. 154, 164, 165, 56 Atl. 662, and in *Frazier* v. *Slack,* 85 Vt. 160, 162, 81 Atl. 161. In each case the distinction between public and private uses lies in the character of the use, and the determination of the character of a given enterprise cannot be made upon consideration of legal principles alone; economic conditions and the needs of the people must have attention. *Rut. Ry., etc., Co.* v. *Clarendon Power Co., supra,* 86 Vt. 51, 52, 83 Atl. 332, 44 L. R. A. (N. S.) 1204.

■ It is said that the term implies "the use of many" or "by the public," although it may be limited to the inhabitants of a restricted locality. The use, however, must be in common, and not for a particular individual. *Pocantico Water Works Co.* v. *Bird,* 130 N. Y. 249, 29 N. E. 246, 247. "An enterprise does not lose the character of a public use because that use may

be limited by circumstances to a comparatively small part of the public." *Jacobs* v. *Clearview Water Supply Co.,* 220 Pa. 388, 394, 69 Atl. 870, 872, 21 L. R. A. (N. S.) 410.

■ ▇ It is essential to a public use, as the term is used in proceedings involving the law of condemnation or eminent domain, that the public must, to some extent, be entitled to use or enjoy the property, not by favor, but as a matter of right. *Rut. Ry. Co.* v. *Clarendon Power Co., supra,* 86 Vt. 53; *Paine* v. *Savage,* 126 Me. 121, 136 Atl. 664, 666, 51 A. L. R. 1194; *Fountain Park Co. Appt.* v. *Hensler et al.* (Ind.), 155 N. E. 465, 470, 50 A. L. R. 1518. "The test whether a use is public or not is whether a public trust is imposed upon the property; whether the public has a legal right to the use, which cannot be gainsaid or denied, or withdrawn at the pleasure of the owner." *Arnsperger* v. *Crawford,* 101 Md. 247, 253, 61 Atl. 413, 415, 70 L. R. A. 497; *Twelfth St. Market Co.* v. *R. R. Co.,* 142 Pa. 580, 21 Atl. 902, 989, 990. In *Vermont Hydro-Electric Co.* v. *Dunn et al., supra,* 95 Vt. at page 150, it is said:

> "The general rule to be gathered from the authorities is that property is devoted to or held for a public use, so as to be exempt from condemnation for a different public use under general authority, when used * * * in connection with a public trust * * * *."

▇ It has frequently been held that lands granted or taken for a public park are devoted to a public use, as being advantageous to the public for recreation, health, or enjoyment. Air, exercise, and recreation are held to be important to the general health and welfare. *Rindge Company* v. *County of Los Angeles,* 262 U. S. 700, 67 L. ed. 1186, 1193, 43 Sup. Ct. 689; *Shoemaker* v. *United States,* 147 U. S. 282, 37 L. ed. 170, 184, 13 Sup. Ct. 361; *C. M. and St. P. Ry. Co.* v. *Minneapolis,* 232 U. S. 430, 58 L. ed. 671, 675, 34 Sup. Ct. 40; *In re Mayor,* 99 N. Y. 569, 2 N. E. 642, 645-653; *Brooklyn Park Comrs.* v. *Armstrong,* 45 N. Y. 234, 6 A. R. 70, 72; *Laird* v. *Pittsburgh,* 205 Pa. 1, 54 Atl. 324, 325, 61 L. R. A. 332; *Memphis* v. *Hastings,* 113 Tenn. 142, 86 S. W. 609, 69 L. R. A. 750, 753, 754; *Sturmer* v. *Randolph County Ct.,* 42 W. Va. 724, 26 S. E. 532, 36 L. R. A. 300, 303.

▇ A park is said to be a piece of ground set apart and maintained for public use, and laid out in such a way as to

■

afford pleasure to the eye as well as an opportunity for open-air recreation. *Commonwealth* v. *Hazen*, 207 Pa. 52, 57, 56 Atl. 263. It is a pleasure ground set apart for recreation of the public to promote its health and enjoyment. *Williams* v. *Gallatin*, 229 N. Y. 248, 128 N. E. 121, 18 A. L. R. 1238, 1241. And lands owned by the State as a forest preserve, under a statute providing that they should be forever kept as wild forest lands have been held to be dedicated to a public use, and not subject to condemnation for railroad purposes. *Adirondack Ry. Co.* v. *New York*, 176 U. S. 335, 44 L. ed. 492, 499, 20 Sup. Ct. 460.

Gifts in trust for the laying out and improvement of public parks have been held to be valid charitable gifts. *Bartlett, Petitioner*, 163 Mass. 509, 514, 40 N. E. 899; *Burbank* v. *Burbank*, 152 Mass. 254, 256, 25 N. E. 427, 9 L. R. A. 748; *Richardson* v. *Essex Inst.*, 208 Mass. 311, 94 N. E. 262, 264, 21 Ann. Cas. 1158; *Burr* v. *City of Boston*, 208 Mass. 537, 95 N. E. 208, 210, 34 L. R. A. (N. S.) 143; and see note Ann. Cas. 1914A, 1219.

It is not essential that the State, or any political subdivision thereof, should be the holder of the legal title to the property so given. The State, or the public, may be, the *cestui que trust*. A grant to an individual in trust for the State, or the public, is valid, in the absence of statutory prohibition. 1 Perry on Trusts, 48, § 62. See, also, *Mayor, etc., of New Orleans* v. *United States*, 10 Pet. 662, 9 L. ed. 573, 593; *Cincinnati* v. *Lessees of White*, 6 Pet. 431, 8 L. ed. 452, 455.

The appropriation of land for a pubic park may be by dedication on the part of the owner, for the doctrine of dedication is applicable to public parks and squares, and the fact of dedication may be established in the same manner as in the case of streets and highways. *Abbott* v. *Mills*, 3 Vt. 521, 526, 23 A. D. 222; *Northport, etc., Assn.* v. *Andrews*, 104 Me. 343, 71 Atl. 1027, 1030, 20 L. R. A. (N. S.) 976; *Abbott* v. *Cottage City*, 143 Mass. 521, 523, 10 N. E. 325, 58 A. R. 143; *Morrow* v. *Traction Co.*, 219 Pa. St. 619, 69 Atl. 41, 42, 43, 123 A. S. R. 677; *Sturmer* v. *Randolph Co. Ct.*, 42 W. Va. 724, 26 S. E. 532, 36 L. R. A. 300, 303, 304; *Hoboken M. E. Church* v. *Hoboken*, 33 N. J. Law, 13, 97 A. D. 696, 699; *Porter* v. *International Bridge Co.*, 200 N. Y. 234, 93 N. E. 716, 719, 21 Ann. Cas. 684; *Cincinnati* v. *Lessees of White*, 6 Pet. 431, 8 L. ed.

452, 456; *Cole* v. *Minn. Loan, etc., Co.*, 17 N. D. 409, 117 N. W. 354, 17 Ann. Cas. 304, 308, 309.

A dedication is the setting apart of land for public use, and it may be express or implied. *Gore* v. *Blanchard*, 96 Vt. 234, 238, 118 Atl. 888. While no particular form of words, oral or written, is necessary, yet the intention of the owner to devote the property to public use, which is the foundation and life of every dedication, must clearly appear. *Gore* v. *Blanchard, supra*, 96 Vt. 239; *County of Bennington* v. *Manchester*, 87 Vt. 555, 557, 90 Atl. 502; *Abbott* v. *Mills*, 3 Vt. 521, 526, 23 A. D. 222. A dedication consists of an offer and an acceptance, and is an application of the doctrine of estoppel *in pais*. The offer by the owner is the representation and the use by the public makes the estoppel complete. *County of Bennington* v. *Manchester, supra; Cloyes* v. *Middlebury Elec. Co.*, 80 Vt. 109, 123, 66 Atl. 1039, 11 L. R. A. (N. S.) 693.

Having thus briefly reviewed certain of the legal principles here involved, we approach the question whether, under the will of Mr. Bartell, the lands here in issue were dedicated to a public use. We have already noted the language used in making the devise. The testator first expresses himself as impressed with the evils attendant upon the destruction of the original mountain forests, and his appreciation of the benefits and pleasure to be derived by the citizens of the State, and visitors therein, from the preservation of a tract of virgin and primeval forest. He provides, as part of the trust, that the forests shall be preserved as far as reasonably may be, and that no trees shall be cut, except those dead or down, and such as it may be necessary to cut in making or repairing needful roads. He states that his principal object is to preserve the wild lands intact as a specimen of original Vermont forest.

So far his intention is clear. Such a devise on trust is clearly for a public use, if the public has the enjoyment and benefit thereof as a matter of right, which cannot be denied or gainsaid by the trustee. It is true that the testator states that the devise is in trust as a park for the benefit of Middlebury College and the students thereof, and expresses his belief that the popularity of the college will thereby be greatly enhanced. But it is further provided that the trustees shall at reasonable times and subject to reasonable regulations, allow the citizens of Vermont and visitors within her limits, access to the park

and enjoyment of its privileges. The public are thus given the right of access and enjoyment, which the trustees are obliged to recognize and allow, because the power to fix reasonable times and regulations is not the power to deny. And the power to make such regulations does not detract from the public character of the devise, because one who gives land to the public may prescribe the terms and limitations upon which he gives it. *Hemphill* v. *Boston*, 8 Cush. (Mass.) 195, 197, 54 A. D. 749; *Atlantic City* v. *Associated Realties Corp.*, 73 N. J. Eq. 721, 70 Atl. 345, 346, 17 Ann. Cas. 743; *Hughes* v. *Bingham*, 135 N. Y. 347, 32 N. E. 78, 80, 17 L. R. A. 454.

An examination of other clauses of the will clearly indicates the intent of the testator to devote the lands in question to a public use. In the eighth clause, the tract in the town of Hancock, included in the lands devised in trust, is expressly said to have been given for public purposes, and so probably withdrawn from the taxable real estate of the town, in recompense for which there is a bequest of money to the town, and in the seventh clause certain wild lands are devised to the State of Vermont "in trust forever, to be held and used for public parks or preserves for the benefit of the citizens of said State of Vermont and the visitors within her borders." In making this devise, the testator states that he has in mind the consideration expressed in the third clause of his will, and does so "in the hope and belief that the trust hereby established will be so administered as to fulfill the objects mentioned in the third clause of this my will * * * *."

The defendant urges that the devise, so far as the public is concerned, creates a condition subsequent, and merely means a forfeiture if the trustees fail to comply with its terms.

■■ The language of the will is that it is a condition of the devise that the trustees shall allow citizens and visitors access to the park. But a will is not to be construed with an over-regard for technical niceties. *Borgner* v. *Brown et al.*, 133 Ind. 391, 33 N. E. 92, 94. The intention of the testator is the first consideration, and this is to be ascertained by taking the whole context of the will. *Button* v. *American Tract. Sec'y*, 23 Vt. 336, 348; *In re Robinson Estate*, 90 Vt. 328, 332, 98 Atl. 826; *Boyce* v. *Sumner*, 97 Vt. 473, 478, 124 Atl. 853; *In re Mansur's Will*, 98 Vt. 296, 298, 127 Atl. 297; *In re Carter's Will*, 99 Vt. 480, 485, 134 Atl. 581; *Crossman* v. *Crossman's*

*Estate,* 100 Vt. 407, 411, 138 Atl. 730. It is said by Mr. Justice Oliver Wendell Holmes that the words employed in a will must be taken in the sense in which they would be used by the normal speaker of English under the testator's circumstances, and:

"The normal speaker of English is merely a special variety or literary form, so to speak, of our old friend the prudent man. He is external to the particular writer, and reference to him as the criterion is simply another instance of the externality of the law."

12 Harv. Law Rev. 417, 418; Holmes, Collected Legal Papers, 203, 204.

██ ██ Furthermore, conditions subsequent are not favored in the law, and if the language of an instrument can be otherwise construed, without violating the plain intent of the maker thereof, it will be done. 2 Devlin on Deeds (3rd ed.), pars. 970B, 970C; *Woodruff* v. *Woodruff,* 44 N. J. Eq. 349, 16 Atl. 4, 6, 1 L. R. A. 380; *DeGoosh* v. *Baldwin & Russ,* 85 Vt. 312, 319, 82 Atl. 182; *Palmer's Estate* v. *Ryan,* 63 Vt. 227, 229, 230, 22 Atl. 574. A will is not to be construed as creating a condition, although technical words are used, where the intention of the testator, as gathered from the entire document, is otherwise. *Emery* v. *Judge of Probate,* 7 N. H. 142, 153.

It has been held that a conveyance of lands to trustees for a charitable use does not create a conditional estate, but only a trust for the charitable use, not liable to be defeated by non-user or alienation, in the absence of an express condition. *In re Seller's Chapel Methodist Church,* 139 Pa. St. 61, 21 Atl. 145, 146, 11 L. R. A. 282. And in *McKenzie* v. *Trustee of Presbytery, etc.,* 67 N. J. Eq. 652, 61 Atl. 1027, 1030, 3 L. R. A. (N. S.) 227, it is said that: "Words seemingly appropriate to a condition only may introduce a covenant, a condition, or a declaration of trust; and the whole of the clause submitted to investigation must, in form and scope, be considered in order to determine within which class it should fall."

██ So, after considering all of the language of the clause under consideration, and noting the absence of words of determination, or reverter (*MacKenzie* v. *Trustees of Presbytery, etc., supra,* 61 Atl. at p. 1031) we think that the intention of the testator was not to affix a condition to the devise, but that the language used by him should be construed as an expression of

342

the terms upon which the declaration of trust was made. *Boyce* v. *Sumner,* 97 Vt. 473, 478, 124 Atl. 853.

We hold that there was a dedication of the lands in question to a public use. The acceptance by the trustees and consequent use and enjoyment by the public amply appear from the allegations of the bill of complaint, and are admitted by the demurrer.

The defendant further contends that, although the provisions for the use and enjoyment of the lands by the citizens of this State and by visitors therein is a public use, yet the devise as a park for Middlebury College and its students is a private use; that, therefore, the dedication is to a joint private and public use with the private use dominant; and that land cannot be dedicated to a joint private and public use so as to withdraw it from condemnation by a public service company.

It is true that land cannot be taken by eminent domain where the public use for which the power is exercised is contingent and prospective and the private use or benefit is actual and present, since in such case the public use would be incidental to the private use. *Kessler* v. *Indianapolis* (Ind.), 157 N. E. 547, 53 A. L. R. 1, 9, and cases cited in annotation, 53 A. L. R. 24. But it is otherwise where the primary use is public, and the private advantage incidental merely. In such case, the primary public use is deemed to be controlling and to characterize the purpose for which the property is to be required. *McMillan* v. *Noyes,* 75 N. H. 258, 72 Atl. 759, 762; *Moore* v. *Sanford,* 151 Mass. 285, 290, 24 N. E. 323, 7 L. R. A. 151; *Ulmer* v. *Lime Rock R. R. Co.,* 98 Me. 579, 57 Atl. 1001, 1003, 66 L. R. A. 387; *Dobler* v. *Mayor, etc., of Baltimore,* 157 Md. 154, 134 Atl. 201, 205; *In re Mayor, etc., of City of New York,* 135 N. Y. 253, 31 N. E. 1043, 1045, 31 A. S. R. 825; *State* v. *Mayor, etc., of Newark,* 54 N. J. Law, 62, 23 Atl. 129, 131; *Henderson Light, etc., Co.* v. *Blue Ridge, etc., Co.,* 243 U. S. 563, 61 L. ed. 900, 905, 37 Sup. Ct. 440; *United States* v. *Chandler-Dunbar, etc., Co.,* 229 U. S. 53, 57 L. ed. 1063, 1079, 33 Sup. Ct. 667. And see other cases cited in annotation, 53 A. L. R. 12-14.

Even if these principles are applicable to the situation before us, we cannot accept the proposition that in this case the public use is subordinate to the private use. The obligation to admit citizens and visitors is as direct and binding

as that in regard to the students of the college. In fact the latter class is included in the former. The duty of imposing reasonable regulations is the same in each case. We think that the public use is primary and characterizes the devise.

 No question is made as to the propriety of the State as a party plaintiff. This is apparent. Since the devise is, as we have seen, a gift in trust, for a public use, the State, through the Attorney General, is a proper party to maintain and defend the rights of the public therein. *Pease* v. *Parson*, 259 Mass. 86, 156 N. E. 4, 5; *Burbank* v. *Burbank*, 152 Mass. 254, 256, 257. And a court of equity is the proper tribunal in which to proceed to protect the rights of the *cestuis que trustent*, as well as the legal rights of the trustee, from what is threatened to be a continuing trespass. To cite authorities upon this point would be superfluous.

We hold that the demurrer was properly overruled. The defendant, in its brief, has asked that in the event the bill is sustained, the cause may be remanded to permit an answer to be filed, and the case will be disposed of accordingly.

*Decree overruling the demurrer is affirmed. In other respects, the decree is reversed pro forma, and the cause remanded with leave to apply. Let the plaintiff recover its costs.*