Rockingham,⎰
Nov. 4, 1947.⎱ No. 3688.

EXETER & a. v. WILLIAM ROBINSON HEIRS & a.

*John W. Perkins* (by brief and orally), for the plaintiffs.

*Ernest R. D'Amours,* Attorney-General, and *Edward J. Reichert,* Law Assistant, *pro se.*

The remaining defendants filed no briefs.

KENISON, J. The trust fund established by William Robinson was accepted and received by the town of Exeter and the state of New Hampshire (Laws 1867, *c.* 96) and has been administered continuously in this state in accordance with the will since that time. The objection of one of the heirs, Malcolm T. Curtis, Jr., to the jurisdiction of this state over the administration and construction of the trust is overruled. *Fernald* v. *Church,* 77 N. H. 108, 109; Restatement, Conflict of Laws, ss. 298, 299; *Greenough* v. *Osgood,* 235 Mass. 235; *Cadbury* v. *Parrish,* 89 N. H. 464. Since both the corporate trustee and the fund are within this state and function therein in accordance with the intent of the testamentary trust, there is no question of the jurisdiction of this court to entertain the petition. "This only court which may supervise a trust and give instructions to a trustee is the court at the seat of the trust." 2 Beale, Conflict of Laws, *s.* 299.1; *Harvey* v. *Fiduciary Trust Co.,* 299 Mass. 457. Presumably the Georgia court would reach the same conclusion. See *Fain* v. *Nix,* 189 Ga. 772, 776.

William Robinson, as stated in his will, was born in Exeter (1793); attended Phillips Exeter Academy and was employed therein until 1817, when he left Exeter and began a successful business career in Georgia. He "made his will with regard solely to the circumstances in Exeter as he had known them in the first two decades of the nineteenth century as youth and young man—that Exeter had an academy for the secondary education of boys and no provisions for girls." In the will itself or the record "there is no evidence to attribute to him hostility to co-education." His paramount intention and predominant purpose was to give girls a practical education equal to that received by boys. The Master has found and the court has decreed that he "had no intention of saddling on his native town a separate secondary educational system." In the light of these competent surrounding circumstances the Female Seminary building "is properly to be regarded merely as a subordinate detail of his larger educational project." *Borchers* v. *Taylor,* 83 N. H. 564, 570. The predominant purpose of the trust and his larger educational project is well stated by the testator: " . . . such a course of instruction as will tend to make female scholars equal to all the practical duties of life,—such a course

of education as will enable them to compete, and successfully too, with their brothers throughout the world, when they shall have to take their part in the actual of life."

The income from this trust fund ($16,000) is now sufficient to pay only slightly over one-half the cost of instruction alone and less than one-half of the total costs of operation, and therefore the buildings are inadequate, obsolete, in disrepair and constitute a fire hazard. Correlation of these facilities with those of the Exeter High School, limited to boys, has been ineffective, unnecessarily expensive and retards the present and future development of secondary education in Exeter as appears from studies made by the town and school district of Exeter as well as the State Board of Education. It thus appears that the use of the seminary buildings is no longer an effective means of accomplishing the testator's purposes. It further appears that in view of the limited income insistence upon separate education, by teachers restricted to "the only and sole instruction of females," will substantially impair accomplishment of the purpose to give them an "equal education with boys." The passage of time and changes in circumstances allow a court of equity to permit a deviation in the manner of accomplishing the main purposes of the testator (3 Scott, Trusts s. 381) or, if necessary, to apply the doctrine of *cy pres*. 3 Scott, Trusts s. 399.

"The court will direct or permit the trustee of a charitable trust to deviate from a term of the trust if owing to circumstances not known to the settler and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purpose of the trust." Restatement, Trusts, s. 381, *comment* d. The abandonment of separate education of females in the seminary and the adoption of co-education can be accomplished under this rule without resort to the doctrine of *cy pres* so long as the Robinson trust income is devoted solely to the instruction of females. 3 Bogert, Trusts (Part 1) s. 561; Restatement, Trusts, *supra, comment* f. If the income of the trust fund were to be used for the instruction of boys or for general educational purposes, that would be an application to a different charitable purpose and would be *cy pres*. 3 Scott, Trusts s. 399. Under the circumstances such a use of the fund is not necessary and is not permitted. The beneficiaries of this fund are females and there is to be no change of beneficiaries in order that the primary intention of the testator may be accomplished. It is only the machinery management and methods of administering the trust wherein a deviation is permitted. Such a deviation is particularly warranted

since the will contains no forfeiture or reverter clause. *Keene* v. *Eastman*, 75 N. H. 191; *Petition of Rochester Trust Co., ante*, 207.

The findings and recommendations of the Master and the findings and decree of the court are affirmed. The first question is answered in the affirmative. The second and third questions are answered in the affirmative, subject to the restriction that the income shall be appropriated to such part of the cost of instruction as may be equitably apportioned to the education of females. The fourth question is answered in the negative.

*Case discharged.*

All concurred.