TRUSTEES OF PITTSFIELD ACADEMY *v.* ATTORNEY GENERAL.

*Willoughby A. Colby,* for the petitioners.

*Ernest R. D'Amours,* Attorney General, *pro se.*

BRANCH, C. J.   The earliest of the above conveyances was of real estate, dated March 27, 1839, from James Joy to Caleb Merrill, John Berry, and Nathaniel Batchelder, their heirs and assigns forever, "for the promotion of virtue and knowledge and especially for the promotion of the higher branches of arts and sciences." The conveyance also provided that the property thereby conveyed was "to be used for the diffusion of useful knowledge and the promotion of arts and sciences." The conveyance also provided that the aca-

demy building and appurtenances "be and remain under the guidance of said Merrill, Berry and Batchelder, as trustees in this grant, or their heirs and assigns, who may be of the denomination of Christians classified and known as Congregationalists," and further that "whenever a corporation may be legally formed and created, the members of which may be of said denomination of Christians known by the name and style of Trustees of Pittsfield Academy . . . to alien, convey and confirm to any said corporation the premises herein granted in trust to be holden by said corporation for the same purposes as are herein specified and for no other, and the members of said corporation are always to be of said denomination of Christians." This conveyance contained no reverter clause. The plaintiffs constitute such a corporation as above described, and although no deed from Merrill, Berry and Batchelder to the Trustees of Pittsfield Academy has been found, it is alleged that the plaintiffs have managed said land and buildings thereon as if it had been conveyed to them, and that the Academy holds the legal title to the premises described.

The plaintiffs for many years prior to November 16, 1894, appear to have carried out the terms of the Joy trust and managed and maintained the academy on the premises conveyed known as Pittsfield Academy. They also built two new school buildings on the premises. The last of these buildings, upon its completion November 16, 1894, was leased to the Pittsfield school district and used by said school district as a high school until September 1, 1942. Pittsfield school district then constructed a new high school on a different site and made no further use of the academy property. Since September 1, 1942, it has been impractical to use the land described in the petition for school purposes.

It thus appears that the primary purpose of the grantor, James Joy, was to provide for "the diffusion of useful knowledge and the promotion of arts and sciences." He further intended that this purpose should be carried out by an institution known as Pittsfield Academy, maintained and managed by a corporation, the members of which should also be members of the denomination known as Congregationalists. With the lapse of time it has become impractical to carry out his intention in the manner intended. Under these circumstances the trustees appear to have concluded correctly that the main purpose of the grantor could best be carried out by assisting in the maintenance of a high school by the Pittsfield school district, and the lease of the academy property on November 16, 1894, was properly entered into for this purpose.

It now appears that a further departure from the original plan of the grantor is necessary and that his primary purpose will best be carried out if said land and buildings are sold and the proceeds of said sale, after deducting the Jeremiah White fund hereinafter referred to, be turned over to the trustees of trust funds of the town of Pittsfield, the income therefrom to be used for the maintenance of the Pittsfield high school. Inasmuch as the grantor's purpose to establish and maintain an independent educational institution known as Pittsfield Academy is impossible of execution and the property is henceforth to be used for the maintenance of a public high school and the trustees of the fund will have no duties except to preserve it and pay out the income, the requirement of the Joy deed that the trustees shall be members of the Congregational denomination loses its chief significance and need no longer be adhered to.

On or about May 24, 1890, Jeremiah W. White gave to the Trustees of Pittsfield Academy the sum of $5,000 "to be used or expended by the trustees of said Academy in such way as they may determine for the best interest and success of said Academy." This conveyance contained a reverter clause as follows: "But if at any time hereafter the said Academy buildings, or any other buildings which may be hereafter erected on the spot where the present buildings now stand shall cease to be used as an Academy school for the term of eight years, then it is my wish, and direction that this my gift, shall go to the Congregational Church of said Pittsfield and that the trustees of said Academy shall pay over to said church the sum of $5,000. or transfer and convey to said church other property of equal value." This gift was accepted by the trustees and was expended for the construction and equipment of a new academy building. The building then constructed is the same now standing on the academy lands conveyed by James Joy above referred to. It has not been used for school purposes since about September 1, 1942. The cost of this building was approximately $8,000, of which $5,000 came from the White gift, so-called, and the balance inferentially from other trust funds in the hands of the plaintiffs. The fair present value of the building is estimated at $2,500. It therefore appears that the White gift is at present represented by approximately 5/8 of the value of the present academy building, which should now be sold and 5/8 of the amount received from said sale should be paid over to the Congregational Church of Pittsfield in accordance with the provisions of the above reverter clause. Although it is stated in the petition that the trustees of Pittsfield Academy have on hand or in banks or invested

in bonds the sum of $4,034.97, which funds are held without restriction either as to principal or income, it must be assumed that they are held for the proper purposes and uses of the Pittsfield Academy, and to use any portion of them for the purpose of paying over to the church the sum of $5,000 would apparently constitute a breach of trust. The church can benefit under the reverter clause only to the extent of 5/8 of the sale price of the academy building.

March 6, 1852, the trustees received under the will of Thomas D. Merrill, a gift which, with interest, amounted on April 1, 1947, to $1,113.75. The will provided that the income only of this fund is to be used by the trustees as they think proper. There was no forfeiture or reverter clause attached to this bequest. This fund may now be turned over to the trustees of trust funds of the town of Pittsfield and the income thereof used for the maintenance of the Pittsfield high school.

On April 1, 1867, the Trustees received from the estate of Moody Kent, a trust fund which now amounts to $712.97, the income only to be used for the purchase and distribution of medals. The plaintiffs continued to purchase and distribute medals in accordance with the bequest so long as Pittsfield Academy continued in operation, and since it ceased operations in 1894, have purchased and distributed medals to designated pupils of Pittsfield high school. As above indicated, this procedure carries out as nearly as possible, the purpose of the grantor. The principal of this fund may now be turned over to the trustees of trust funds for the town of Pittsfield and the income thereof used to purchase medals for pupils in the Pittsfield high school chosen as nearly as may be in accordance with the will of the said Moody Kent.

October 17, 1889, the plaintiffs received under the will of Frances French a bequest now amounting to $1,419.95, the income only of this fund to be used for "the proper uses and purposes of said Pittsfield Academy." This fund, like the Merrill fund above referred to, may now be turned over to the trustees of trust funds of the town of Pittsfield, to be used for the maintenance of the Pittsfield high school.

The above orders, modifying as they do the directions of the several grantors, are made in accordance with the rule which has been stated as follows: "The passage of time and changes in circumstances allow a court of equity to permit a deviation in the manner of accomplishing the main purposes of the testator (3 Scott, Trusts s. 381) or, if necessary, to apply the doctrine of *cy pres*. 3 Scott, Trusts s. 399." *Exeter v. Robinson Heirs*, 94 N. H. 463, 466. This rule was recognized and

applied in *Borchers* v. *Taylor*, 83 N. H. 564, 571, and cases cited; *Adams Academy* v. *Adams*, 65 N. H. 225.

*Decree for the plaintiffs.*

All concurred.