OXFORD COUNTY AGRICULTURAL SOCIETY
*vs.*
SCHOOL ADMINISTRATIVE DISTRICT No. 17

Oxford.   Opinion, July 23, 1965.

*Bernstein, Shur, Sawyer & Nelson,*
  by *Barnett I. Shur* and
    *C. Daniel Ward,* for Appellant.

*Verrill, Dana, Walker, Philbrick & Whitehouse,*
  by *Roger A. Putnam,* for Appellee.

SITTING: WILLIAMSON, C. J., WEBBER, MARDEN, RUDMAN, JJ. TAPLEY, J., did not sit. SULLIVAN, J., sat at argument but retired before the opinion was adopted.

WEBBER, J. On appeal. The defendant School Administrative District No. 17, a quasi-municipal corporation charged with the responsibility of providing public school education, seeks to take property of the plaintiff Oxford County Agricultural Society by eminent domain. The District requires the property for the location of a new high school. It has general statutory authority to take by eminent domain for its lawful purposes but it has never been given specific legislative authority to take the property of this plaintiff.

The first issue is whether or not the Society's property is devoted to public uses to such an extent and in such a manner as to provide it with an exemption from condemnation. The plaintiff conducts an annual fair on the property in question which has all the usual attributes of an agricultural fair with which Maine people have long been familiar. See *Hoyt* v. *Fair Association,* 121 Me. 461, 465, 118 A. 290, 292. The justice below correctly found that while the activities of the Society benefit the public in some degree, they fall short of constituting "public uses" in the technical sense which would exempt its property from eminent domain process. The promotion of agricultural products at a fair which lasts but a few days in each year, al-

though highly desirable, can hardly be said to lift any appreciable burden from the shoulders of the taxpayers. The plaintiff is a private voluntary corporation chartered by the Legislature. It is not a political subdivision of the state nor is it invested with any political or governmental function. It was not created to assist in the conduct of government nor was it created by the sovereign will of the Legislature without the consent of the persons who constitute it. These persons may decline or refuse to execute powers granted by legislative charter. They may at any time dissolve and abandon it and are under no legal obligation to conduct an annual fair or to carry on or continue any of the activities which are said to benefit the public. The principles governing exemption from condemnation were well stated in *Tuomey Hospital* v. *City of Sumter* (1964), 134 S. E. (2nd) (S. C.) 744, 747:

> "We recognize that it is difficult to give an accurate and comprehensive definition of the term 'public use.' The distinction between public and private use lies in the character of the use and must to a large extent depend upon the facts of each case. There are, however, certain essential characteristics which must be present if the use is to be deemed public and not private within the meaning of the law of eminent domain.
>
> This Court has rejected the view that public use and public benefit are synonymous. * * *
>
> The fact that the Tuomey Hospital is an eleemosynary corporation devoted to charitable purposes does not within itself constitute a public use within the meaning of the foregoing statute. Mere benefit to the public or permission by the owner for use of the property by the public are not enough to constitute a public use, but it must appear that the public has an enforceable right to a definite and fixed use of the property. * * * The rule was recognized in the Riley case (Riley v. Charleston Union Station Co., 71 S.C. 457, 51 S.E.

485) that to constitute a public use 'the public must have a definite and fixed use of the property to be condemned, independent of the will of the person or corporation taking title under condemnation, and that such use by the public is protected by law.'

The general rule, to which we adhere, was thus stated in the case of the President and Fellows of Middlebury College v. Central Power Corporation of Vermont, 101 Vt. 325, 143 A. 384, 388: 'It is essential to a public use, as the term is used in proceedings involving the law of condemnation or eminent domain, that the public must, to some extent, be entitled to use or enjoy the property, not by favor, but as a matter of right. * * * The test whether a use is public or not is whether a public trust is imposed upon the property; whether the public has a legal right to the use, which cannot be gainsaid or denied, or withdrawn at the pleasure of the owner.' "

We are satisfied that the statement set forth in 18 Am. Jur. 720, Sec. 94, accurately summarizes the requirements for exemption:

"To exempt property from condemnation under a general grant of the power of eminent domain, it is not enough that it has been voluntarily devoted by its owner to a public or semipublic use. If the use by the public is permissive and may be abandoned at any time, the property is not so held as to be exempt. The test of whether or not property has been devoted to public use is what the owner must do, not what he may choose to do. It is immaterial how the property was acquired; if its owner has devoted it to a public use which he is under a legal obligation to maintain, it comes within the protection of the rule exempting it from condemnation."

We conclude, as did the justice below, that the property of the Society is not immune from condemnation by the District.

The Society challenges the technical sufficiency of the taking in several particulars. It is first claimed that the laying out of the lot for schoolhouse purposes was not preceded by the filing of a petition. The provision for condemnation (20 M. R. S. A., Sec. 3562) contains a reference to the "laying out of town ways." Municipal officers of towns may lay out town ways only "on petition" by the terms of 23 M. R. S. A., Sec. 3001. The language quoted in *Cousens* v. *School-District* (1877), 67 Me. 280, 286, is applicable here: " 'When one law thus refers to another, we must take care not to follow it into its details beyond the line where the cases are analogous.' " It suffices to say that the location of a school is logically initiated by designation by the District directors and not by petition as in the case of town ways. There is no express requirement of a preliminary petition in 20 M. R. S. A., Sec. 3562. Applying the principles stated in *Cousens*, we hold that the petition requirement contained in 23 M. R. S. A., Sec. 3001 is not incorporated by reference and is not a requirement under 20 M. R. S. A., Sec. 3562.

The plaintiff contends that the posting of notice did not meet statutory requirements. The property in question lies partly in the town of Norway and partly in Paris. It is urged that there should have been four postings in each town. Here again the plaintiff depends upon the incorporation by reference into 20 M. R. S. A., Sec. 3562 of the requirements of 23 M. R. S. A., Sec. 3001. The pertinent language of the latter statute is, "They shall give written notice of their intentions, to be posted for 7 days in 2 public places in the town and in the vicinity of the way, describing it in such notice * * * ." In *School Administrative District No. 17* v. *Orre, et al.* (1964), 160 Me. 45, 49, 197 A. (2nd) 319, 321, we had under consideration somewhat related problems. We said in part: "The language of a particular section of the statutes should now be construed in such a manner as to implement the manifest intention of

the Legislature and conform to the new pattern." Some interpretative changes are obviously required as we apply the language of one statute to the other. For example, the word "way" must be interpreted to mean "lot" in order that the incorporation by reference may accomplish its intended purpose. Likewise the word "town" must be interpreted to mean "district" whenever the taking is by a school administrative district. See *School Administrative District No. 17* v. *Orre, et al. (supra)*. The language appropriate to town ways would then by incorporation into the statute dealing with schools require only that as a part of the process of appraising damages, the directors give written notice by posting in 2 public places in the district and in one place in the vicinity of the proposed lot or location. The plaintiff readily admits that if this be the notice requirement, it was met in this case.

Finally, the plaintiff contends that the statute required a final acceptance of the location by the voters of the District. This contention is valid only if the provisions of 23 M. R. S. A., Sec. 3003 are deemed to be incorporated by reference into 20 M. R. S. A., Sec. 3562. Sec. 3003 provides in part: "The way is not established until it has been accepted in a town meeting legally called, after the return has been filed, by a warrant containing an article for the purpose." Such incorporation, however, would create inconsistent requirements and defeat legislative intent. By its express terms Sec. 3562 provides that the location of schools begins with a vote at a town meeting in the case of a town and with a vote of the directors in the case of a district. Secs. 3001 and 3003 provide that the location of a way begins with a petition to the Municipal Officers followed by appropriate action by them which is later confirmed by vote at town meeting. We hold that in the case of a district no vote by the voters of the district designating or confirming the location is required.

340

Other suggestions as to possible technical deficiencies in the mechanics of taking by eminent domain have not been pressed and in any event are without merit.

The entry will be

*Appeal denied.*