**Martha C. Wilbur and James B. Wilbur, III v. The University of Vermont and State Agricultural College, Defendants; The United States of America and The Library of Congress Trust Fund Board, Intervenors**

[270 A.2d 889]

No. 139

Present: Holden, C.J., Shangraw, Smith and Keyser, JJ., and Gregg, Dist. J.

Opinion Filed September 10, 1970

34

*Fitts & Olson,* Brattleboro, for Plaintiffs.

*Black & Plante* and *George W. Ray, Jr.,* White River Junction, *Latham & Eastman,* Burlington, for The University of Vermont and State Agricultural College.

*George F. W. Cook,* United States Attorney, for the United States and The Library of Congress Trust Fund Board, Intervenors.

**Holden, C.J.** The purpose of this action in chancery is to terminate a charitable trust and compel the reversion of its assets to the residuary estate of the deceased donor. The cause comes to this Court for the second time, as an appeal before final judgment. As before, we are asked to reject the appeal for procedural reasons.

When the case was previously here, it was remanded to allow the chancery court to hear and determine the petition of the United States of America and the Library of Congress to intervene. The defendant was granted a limited time from the chancellor's order on the intervention "to procure proper certification of specific questions of law for determination by this Court according to the provisions of 12 V.S.A. § 2386." *Wilbur* v. *University of Vermont,* 127 Vt. 283, 286, 247 A.2d 897 (1968).

The directives in the remand have been accomplished. However, the plaintiffs now contend that the appellants have not

procured proper certification of the questions arising from the lower court's refusal to dismiss the complaint. The impropriety is claimed in that there has been no hearing on the drafting of questions of law and the plaintiffs received no notice of the questions proposed by the defendants for our review.

Neither the statute nor rule of court, governing appeals before final judgment, require such notice and hearing. 12 V.S.A. § 2386, *supra;* 12 V.S.A. App. I, R. 2A. Beyond that, the plaintiffs were heard on whether the cause should be certified as an interlocutory appeal. See *Wilbur* v. *University of Vermont, supra,* 127 Vt. at 284. The cause was returned to the chancellor for hearing on the motion to intervene. Our examination of the record fails to disclose any request by the plaintiffs to be heard in the matter of the context of the specific questions for review until after the cause was returned to this Court. On this state of the record there is no justification to reject the appeal on the grounds stated.

The plaintiffs further object, contending that the facts which underlie some of the questions presented have been put in issue by the defendants' answer. But this is no obstacle. The responsive pleading concludes with a challenge to the sufficiency of the complaint and seeks to dismiss the action for failing to state a claim upon which relief can be granted. This is consistent with 12 V.S.A. § 1034(6). This aspect of the motion raises the same questions of law formerly reached by *demurrer*. In reviewing the order of the lower court, in refusing to dismiss, the facts alleged and exhibited with the complaint are taken to be true. *Price* v. *Rowell,* 121 Vt. 393, 395, 159 A.2d 622 (1960). In the same way, the answers to the questions certified are to be given in the context of the facts as stated in the complaint.

The subject of the complaint is the University of Vermont Trust, founded by James B. Wilbur by his indenture of March 5, 1928. The donor died testate August 28, 1929. His last will, executed in 1927, makes no reference to the trust. The donor was survived by his son James B. Wilbur, Jr., to whom he bequeathed his residuary estate.

The junior Wilbur died in 1933. The plaintiff, Martha C. Wilbur, is the widow of James, Jr. Her co-plaintiff James B.

Wilbur, III, is his son. They are life tenant and remainderman, respectively, in the residuary estate of James B. Wilbur, Jr. The plaintiffs, as heirs of the donor's residuary legatee, claim there has been a violation of the terms of the University of Vermont Trust which entitle them to the trust property.

The trust instrument of March 5, 1928, directed the trustee, Bankers Trust Company of New York City, to hold the trust property and pay the income to the donor during his lifetime. At his death the trustee was directed to set aside certain portions of the total fund to establish five separate trusts for the benefit of five designated beneficiaries for and during their respective lives. James B. Wilbur, Jr., was one of the life beneficiaries so designated.

Each of these trusts had a common provision that upon the death of the beneficiary ". . . the Trustee shall pay and transfer the moneys and securities constituting said trust fund to the Trustee as Trustee of the trust hereinafter described as the 'UNIVERSITY OF VERMONT TRUST' or if that trust be not then in existence, such trust fund shall be disposed of as provided in article SEVENTH hereof."

Article SEVENTH of the supplemental indenture provides:

The University of Vermont Trust, hereinabove referred to shall not be created unless the Legislature of Vermont pass a law limiting the number of students attending the University of Vermont in any one year to one thousand, and no students from outside the State to be admitted until after native born Vermont students, who apply and qualify, are admitted, or the Trustees of the University of Vermont, if they have the authority to do so, pass a similar resolution. This number of one thousand may be added to at the rate of two hundred and fifty for every one hundred thousand increase in the number of inhabitants of the State over the United States census taken in 1920, as determined by the best available information obtainable in the State of Vermont.

As soon as this provision is carried out by the Legislature of Vermont or the Trustees of the University, the Trustee shall constitute and set up the trust to be known as the "UNIVERSITY OF VERMONT TRUST" for the purposes and in the manner and on the conditions set

forth in this indenture. The income of the trust fund is to be paid over to said Trustees of the said University of Vermont to be expended by them as hereinafter directed, and after the expiration of a period of ten (10) years from the date of the setting up of this trust, the Trustee or any Substituted Trustee shall deliver and pay over to the Trustees of the said University of Vermont the assets then constituting the principal of the trust. If by reason of any law of the State of New York, or for any other reason, the Trustee under this deed of trust cannot carry out the terms of the trust herein provided, or if it or any Substituted Trustee declines to carry out the provisions of this article numbered SEVENTH (providing the above-mentioned conditions have been complied with by the State Legislature or the Trustees of said University), it shall nevertheless turn over to the Trustees of the University of Vermont the securities and funds composing said University of Vermont Trust, and the function of this trust shall thereupon devolve upon the said Trustees of the University of Vermont, who shall expend the income of said trust fund as herein directed.

The Trustees of the University of Vermont are to use the income of said trust in defraying the reasonable living expenses and cost of education, of such character as is hereinafter mentioned, of pupils of the public schools of the State of Vermont, in accordance with the directions hereinafter given.

The pupils constituting the class so to be benefited by the use of the income of said trust as herein described, are to be such pupils, either male or female, as shall be residents of the State of Vermont. The said pupil shall be certified by the principal or teacher of the school which said pupil has attended with reasonable regularity during a consecutive period of not less than six months within the two years next preceding the making of the certificate by said principal or teacher. The certificate must state that in the best judgment of the said principal or teacher the pupil is of good moral character and desires an education, but is financially unable to obtain such education, and that in the judgment of the said principal or teacher said pupil will benefit by said education and is

likely to become a more useful citizen of the United States by reason of such education, and that the standing of such pupil in the studies pursued in the said school has been extraordinarily good.

By the term "education" as used in this deed of trust is meant that given by any public grammar, public high school, college preparatory school, either public or private, and any seminary, institute, manual training school, trade school, college or university, or medical or law school or technical school, located in the State of Vermont. The expenses of such pupil are intended to include all reasonable and necessary expenses, including transportation, board, lodging, clothing, books, tuition and other supplies. The judgment and discretion of the Trustees of the University of Vermont or a majority of them, are to be controlling upon all matters involved in carrying out the intention expressed in this, the Seventh article of this trust deed, except that no person shall suffer disadvantage by reason of race or creed.

The unexpended part of the income each year in this trust may be used as the Trustees of the University of Vermont may direct.

If the Legislature of the State of Vermont, or the Trustees of the University as the case may be, fail to carry out the provisions of this paragraph regarding the limiting of the number of students, then the several funds (which according to articles SECOND, THIRD, FOURTH, FIFTH, SIXTH AND SEVENTH of this indenture, are to go into and comprise the "UNIVERSITY OF VERMONT TRUST") shall be delivered at the time when the respective persons shall die who, according to said articles, will first receive the income from such funds, unto the LIBRARY OF CONGRESS TRUST FUND BOARD, the income thereof to be used as such Board may direct. In the same way, if any of the persons mentioned in said articles, SECOND, THIRD, FOURTH, FIFTH and SIXTH of this indenture die prior to the amendment of the law in question by the Legislature of the State of Vermont, or the making of such regulation by the Trustee of the University, the fund from which such person was receiving the income, or would have received

such income had he outlived the Donor, shall be paid to the Library of Congress Trust Fund Board for the uses and purposes aforesaid.

If at any time after the amendment to the law in question by the Legislature of the State of Vermont, or the making of the regulation by the Trustees of the University, the law or regulation, as the case may be, is rescinded or becomes ineffective for any reason, the entire fund, or the securities in which it is invested at that time, comprising the UNIVERSITY OF VERMONT TRUST, together with any funds which would have gone into such trust had it continued in existence, shall be paid to the LIBRARY OF CONGRESS TRUST FUND BOARD, in the manner and for the uses and purposes above described.

Article Eighth through Eleventh direct the trustee, upon the death of the donor, to pay over certain specified gifts to eight different charities. Disposition of the entire remainder is provided in article Twelfth:

TWELFTH: The balance of all the funds, and the securities in which the same may have been invested, remaining in the hands of the Trustee after making the foregoing dispositions shall be paid unto the Trustees of the UNIVERSITY OF VERMONT of the City of Burlington, in the State of Vermont, to be applied to the uses and purposes of the said University, but only on condition that the Legislature of the State of Vermont, or the Trustees of the University, have limited the number of students to one thousand in any one year and made provision for native-born students of Vermont in the manner heretofore provided in article SEVENTH of this indenture; and, if such legislation or regulation shall not have been enacted, then the Trustee shall pay over such fund to the LIBRARY OF CONGRESS TRUST FUND BOARD to be used as such Board may direct.

On June 14, 1929, the trustees of the University adopted a resolution accepting the conditions imposed in the trust agreement. The authority of the trustees of the University of Vermont to limit the number of students, as provided in the trust instrument, was confirmed by decree of the Washington

County Court of Chancery dated September 19, 1932. The decree further adjudged that the University had complied with the conditions specified in Article Seventh of the Supplemental Indenture and directed the Bankers Trust Company, Trustee, to pay over the principal of the trust in accord with the donor's directive.

The proceedings in 1932 were instituted by the State of Vermont. It joined as parties defendant, the University of Vermont and its board of trustees, the Library of Congress, the Bankers Trust Company, the executors for the donor's estate, James B. Wilbur, Jr., as well as the numerous beneficiaries named in the trust agreement. The chancellor's decree provides that if, at any time, the resolutions adopted by the University of Vermont on June 14, 1929, are rescinded, or become ineffective for any reason, the cause shall be brought forward on motion of the Library of Congress or any other party to determine the sufficiency of the University's future compliance with the terms of the decree.

In the year 1960 the enrollment of students at the College of Arts and Sciences in the University of Vermont exceeded the numerical limitation imposed in the trust indenture by Article Seventh. In that year the Congress of the United States enacted a law which was signed by the President, authorizing the Attorney General, on behalf of the Library of Congress Trust Fund, to consent to a modification of the terms of a trust instrument executed by James B. Wilbur.

The preamble recites that the enrollment in the University of Vermont College of Arts and Sciences has approached the numerical limitation imposed by the terms of the Wilbur trust and it has become necessary to refuse admission to qualified applicants. It further states that the limitation of the trust is in conflict with the stated policy of the National Defense Act. The authority conferred on the Attorney General of the United States is expressly confined to the modification of supplemental indenture as to the enrollment limitation.

On March 14, 1961, the Washington County Court of Chancery, on petition of the university, modified its prior decree of September 19, 1932. The modified decree authorized the university to admit qualified applicants without numerical limitation and without impairment to the beneficial interest created in the University of Vermont Trust. In conclusion, the com-

plaint alleges that neither of the plaintiffs was given notice required by law of the proceeding of the chancery court which entered the modified decree of 1961, and they have not consented or acquiesced in that result.

It further appears from an exhibit attached to the complaint, that notice of the petition to modify was given by citation to the original parties in interest and by publication, as "to all other possible parties in interest." We consider the order of the court in this respect, as well as all other attached exhibits, as part of the complaint. 12 V.S.A. § 1033; *Standard Register Company* v. *Greenberg,* 120 Vt. 112, 116, 132 A.2d 174 (1957).

With such facts before us, we are called upon to determine whether these plaintiffs have an enforceable reversionary interest in the University of Vermont Trust. The answer to this question responds to all of the critical issues certified by the lower court and dictates the judgment to be entered.

The plaintiffs have no standing to claim the reversion on the strength of the trust agreement. The donor made no provision for the trust property to revert to him or to his testamentary estate. However, the plaintiffs stake their claim to the trust property on the premise that the increase in enrollment at the university results in a failure of the purpose for which the trust was created. It is said that the consequence of the deviation from the terms of the trust is a forfeiture to the donor's estate and, by way of a resulting trust, to the plaintiffs as heirs of the donor's residuary legatee. Such is the theme of the complaint.

The trust agreement provides that the University of Vermont Trust shall not be created unless the Legislature enacts a law, or the trustees, if so authorized, pass a resolution limiting the number of students to one thousand with limited increase according to the state's population. The trust did in fact arise when the trustees resolved to limit the student body and accepted the gift in trust. Restatement Trusts 2d § 401(2).

The deed of trust goes on to provide that if this limitation fails for any reason, provision is made for the fund to go to the Library of Congress Trust Fund Board, the income to be used as the Board may direct. But the board's discretion in this respect is limited to the uses and purposes previously de-

scribed. The plaintiffs concede that this provision would bind the library board, as alternate or substitute trustees, to carry out the same purposes that the donor assigned to the University of Vermont Trust.

The reason underlying the provision to limit the size of the student body is not disclosed in the trust instrument. In any event, his desire to keep the college small is subordinate to his intention to aid its Vermont students. There is no indication that the donor intended the consequence of unlimited enrollment to be a failure of that purpose. To the contrary, he provided that this event would result in a gift over to the Library of Congress Trust Fund Board, as substitute trustees, to carry out his first objective even though his boundaries for enrollment were exceeded.

 The validity of a gift over from one charitable corporation to another, upon the happening of an event, is well established. *Jones* v. *Habersham*, 107 U.S. 174, 185 (1882); *Trustees of Pittsfield Academy* v. *Attorney General*, 95 N.H. 51, 57 A.2d 161, 164 (1930); *Colonial Trust Co.* v. *Waldron*, 112 Conn. 216, 152 Atl. 69, 71 (1948); *Mackenzie* v. *Trustees of Presbytery*, 67 N.J. Eq. 652, 61 Atl. 1027, 1035 (1905). And Professor Scott points out that "(i)t is immaterial whether upon the happening of the event the same trustees are to hold the property for other charitable purposes, or whether new trustees are to hold the property for the same or other charitable purposes." Scott, Trusts § 401.5 (3rd Ed.); Restatement Trusts 2d § 401, Comment f.

The plaintiffs treat the violation of the restriction on student enrollment, as imposing a condition subsequent, which caused the trust to fail when the United States and the Library of Congress abandoned the trust estate. In the first place, the Act of Congress cannot be construed as a declination of the trust. The enactment confines the authority of the Attorney General of the United States to consent to the modification of the supplemental trust indenture to the removal of the enrollment restriction,—and not otherwise.

 Beyond that, we do not interpret the restriction as imposing a true condition subsequent. Such a construction is disfavored. And an instrument which establishes a trust will not be construed as creating a conditional estate where the

intention of the donor, taken from the entire document, indicates a contrary purpose. *Middlebury College* v. *Central Power Corporation of Vermont,* 101 Vt. 325, 341, 143 A. 384 (1928).

The absence of any provision for forfeiture or reverter is a strong indication that the donor did not contemplate a failure of the ultimate purpose of his gift. The limitation imposed in the Seventh article states the requirement for the creation of the University of Vermont Trust. The same paragraph proscribes the terms upon which its trustees can hold the legal estate and administer the trust. *Middlebury College* v. *Central Power Corporation of Vermont, supra,* 101 Vt. at 341; *MacKenzie* v. *Trustees of Presbytery, supra,* 61 Atl. at 1033; Scott, Trusts § 401.2 (3rd Ed.).

The fact the trustees of a charitable trust violate its terms does not cause the trust to fail nor entitle the settlor or his successor to enforce a resulting trust. Scott, Trusts § 401.1. Unless it is impossible or impractical to execute the donor's purpose, the remedy for a breach of trust is by suit at the instance of the attorney general of the state to compel compliance. It creates no right in the donor's heirs to enforce a resulting trust. *Id.*; Restatement Trust 2d § 401; Comment a; *Smart* v. *City of Easton,* 170 U.S. 383, 42 L.Ed. 1078, 1084 (1898); *Bradway* v. *Shattuck,* 325 Mass. 168, 89 N.E.2d 753, 755 (1950); *MacKenzie* v. *Trustees of Presbytery, supra,* 61 Atl. at 1038.

As we have seen, it was Mr. Wilbur's primary intention to apply the yield of the trust property for the benefit of deserving Vermont students. His selection of trustees is secondary to that purpose. And though the trust estate may shift, the beneficiaries remain unchanged. In a trust founded on this design, the fact that the first trustee fails to perform, or the alternate declines to accept the transfer, will not defeat the trust. A trust will not fail for want of a trustee. *Stone, Exec.* v. *Griffin,* 3 Vt. 400, 402 (1831); *Manufacturer's National Bank* v. *Woodward,* 138 Me. 70, 21 A.2d 705, 708 (1941); Restatement Trusts 2d § 397; Scott, Trusts § 397.3 (3rd Ed.).

The changing circumstances and policy considerations which have developed since the trust was created, justified the trustees of the University of Vermont to petition the court of chancery for a modification of the terms upon which they held and administered the Wilbur gift. And, in view of the state and national policy expressed in the petition to the Washington County Court of Chancery, confirmed by the 1960 Act of Congress, it was appropriate for the Library of Congress Trust Fund Board to consent to the modification. It was within the jurisdiction of the equity court to grant a deviation from the limitation to allow the trust estate to remain in the trustees of the university. It is apparent that this arrangement was well suited to serve the donor's dominant purpose of aiding the students in Vermont who qualified for his gift.

And even if the plaintiffs' theory that the trust is limited by a condition subsequent could be supported, a forfeiture would not necessarily follow. The general power of a court of equity to relieve against the forfeiture of a charitable trust could intervene to save the trust in case of a necessity arising from unforeseen circumstances. *Jones* v. *Habersham, supra,* 27 L.Ed. at 404. Restatement Trusts, 2d § 401, Comments e and h.

The Washington County Court of Chancery, which first took jurisdiction of the trust, was the proper tribunal to protect the interest of the beneficiaries, as well as the legal status of the trustees. *Middlebury College* v. *Central Power Corporation of Vermont, supra,* 101 Vt. at 343. The plaintiffs, as heirs of the donor, had no right in law or equity to claim a forfeiture and reversion of the trust estate in that proceeding. *City of Belfast* v. *Goodwill Farm,* 150 Me. 17, 103 A.2d 517, 521 (1954) ; *MacKenzie* v. *Trustees of Presbytery, supra,* 61 Atl. at 1038; *Trustees of Pittsfield* v. *Attorney General, supra,* 57 A.2d at 164.

The plaintiffs' claim in this respect achieves no greater stature in the Bennington County Court of Chancery. In answer to the questions certified, we hold the plaintiffs have no enforceable reversionary interest in the trust. Their complaint fails to state a cause for granting them relief and final judgment will be entered accordingly.

*The order of the Bennington County Court of Chancery denying the defendants' motion to dismiss is overruled. Judgment for the defendants to recover their costs.*