THE BELLOWS FREE ACADEMY OF FAIRFAX, VERMONT, AND
   THE TRUSTEES THEREOF, AND THE TOWN OF FAIRFAX
   *v.* MARGARET B. SOWLES, EDWARD A. SOWLES, AND
   SUSAN B. SOWLES.

May Term, 1903.

Present:   TYLER, MUNSON, WATSON, STAFFORD, and HASELTON, JJ.

Opinion filed May 28, 1904.

*Wills—Conditioned Bequest—Acceptance—Trustees—Duties
   and Powers—Injunction—Parties.*

When a bequest is made to a town on condition that, at a legally
   warned meeting, it should vote to accept the bequest on the con-
   ditions named in the will, and should appoint five trustees to
   take charge of the same; and the town at such meeting voted
   "to accept the bequest," and appointed men "as trustees to receive
   the property and carry out the purposes as named in the testa-
   tor's will," such vote is a sufficient acceptance of the bequest on
   the conditions named in the will.

When a bequest is made to a town in trust for the purpose of estab-
   lishing an academy, and the will provides that the fund shall be
   managed in a specified manner by trustees to be appointed by the
   town, who should give bonds to the treasurer of the town, and
   make report of their doings at each annual March meeting;
   though after the trustees were appointed and had received the
   fund, the Legislature passed a private law incorporating the acad-
   emy and the trustees, and the trustees organized under the act,
   this will not cause the bequest to go over, under a provision of the
   will that, if the town should neglect or refuse to perform the
   various conditions, or should divert any part of the fund from
   the purpose of the trust the same should vest in a designated
   person.

A will which gives shares of stock in a railroad company to a town
   in trust for the purpose of establishing an academy, and which
   provides that the dividends, "as far as practicable" shall be in-
   vested in said stock till the fund shall amount to a specified sum,
   when a certain amount thereof shall be used in the construction
   of buildings, does not mean that the fund shall be kept forever

in the stock of the same railroad company, but that when the fund, invested as directed, shall have increased to the extent specified, it may be re-invested, under the law pertaining to trust funds in general.

When, under the terms of a will giving certain shares of stock to a town in trust for the purpose of establishing an academy, trustees are elected by the town to receive and manage the property, and thereafter a private law is passed incorporating the academy and said trustees, a bill in equity subsequently brought by the town to restrain the executor of the testator from interfering with the sale of the stock, and which is sworn to by the trustees, one by one, is not demurrable on the ground that it is not in the name of proper parties, though said trustees are also therein named as trustees of the academy corporation, and that corporation is joined as orator.

APPEAL IN CHANCERY. Heard on demurrer to the bill at the September Term, 1902, Franklin County, *Tyler,* Chancellor. Demurrer overruled, *pro forma,* and bill adjudged sufficient. The defendants appealed. The opinion states the case.

*E. A. Sowles* for the defendants.

The Legislature cannot sanction a scheme of administration of a trust fund different from that prescribed by the donor. *Cary Library* v. *Bliss,* 151 Mass. 364; *Granville* v. *Mason,* 53 N. H. 515; *Thorp* v. *Fleming,* 1 Hous. 580; *Plimpton* v. *Jackson,* 15 Pa. St. 44; *Stanley* v. *Colt,* 5 Wall. 119; *Lackland* v. *Walker,* 151 Mo. 210; *Webster* v. *Morris,* 66 Wis. 396.

The directions given in an instrument of trust must be strictly followed, and are strictly construed. Perry Trusts, §§ 294, 460-475.

*Alfred A. Hall* and *Lee S. Tillotson* for the orator.

· If the demurrer is not well founded, this Court should send down a mandate directing a final decree. *Bailey* v. *Holden, et al.,* 50 Vt. 14; *Stewart* v. *Flint,* 57 Vt. 216.

STAFFORD, J. This is a bill for an injunction, and the questions are raised by a demurrer to the bill which was incorporated in the answers and brought forward for hearing. It is claimed that the bill is insufficient for want of equity and for want of parties. It will be necessary to state the allegations rather fully.

When Hiram Bellows, late of St. Albans, died (Oct. 18, 1876) he left a will, made a few months before in part as follows: He gave in trust to his native town of Fairfax two hundred and fifty shares in the Chicago, Rock Island & Pacific Railroad Company of the par value of $100 each, the dividends upon which, as far as practicable, were to be invested in the same stock until the fund should amount to $250,000, for the purpose of establishing a free school in that town to be located on land thereinafter devised, and to be called The Bellows Free Academy of Fairfax, Vermont. The primary and higher branches of learning were to be taught therein and the children of indigent parents were to be preferred. Then followed a devise to the town, in trust, of a tract of land in Fairfax. Within one year from the time when notice of the bequest should be given by the executor to the selectmen of Fairfax, the town was to choose five competent and responsible men to serve as trustees of the funds and to control the land, the trustees to be chosen for terms of from one to five years respectively, and thereafter at each annual March meeting one trustee to be chosen for five years and all vacancies filled. The trustees were to give bonds to the treasurer of the town with ample sureties for the faithful discharge of their duties, upon failure to do which their places

were to be vacant and others appointed in their stead. Said trustees were to take charge of the fund, which was to be called The Bellows Free Academy Fund, and make report of the same at each annual March meeting. They were to prevent the erection of any building on the premises until the funds should have accumulated to the sum of $250,000, but were to prepare the land as far as practicable by fencing and grading and setting out ornamental trees. When the funds should reach the sum named the trustees were directed to erect on the premises suitable buildings for the purpose aforesaid, expending in buildings, apparatus and library not to exceed $50,000, leaving $200,000 as a permanent fund, the interest of which was to be expended in procuring teachers and paying other expenses of the Academy. The bequest was made on condition that the town, at a legally warned meeting, within one year after receiving notice of this provision, should vote to accept the bequest upon the condition named and should appoint the trustees to take charge of the same. There was a further provision that if the town should neglect or refuse to perform the various conditions and stipulations, or directly or indirectly divert any part of the railroad shares or real estate or dividends, interest or avails thereof, "from the purposes and objects named in the will in the manner therein provided," said stocks, real estate, dividends, interest and avails should go to Margaret B. Sowles and her heirs forever.

The Margaret B. Sowles just named is the daughter of the testator. Her husband, Edward A. Sowles, is the executor of the will, and both are defendants hereto. The other defendant is their daughter.

Notice of the bequest was given to the town, and within one year thereafter, on the 6th day of March, 1877, at a

legally warned meeting, the town "voted to accept the bequest of Hiram Bellows * *, * * to the town of Fairfax and appointed" five men for the specified terms "as trustees to receive the property and carry out the purposes as named in the testator's will." At each annual March meeting since, a new trustee has been chosen and all vacancies have been filled and bonds have been duly furnished. The trustees now holding office under the town's election are the individuals named in the bill as the trustees of the academy. The original trustees so elected, acting under the executor's advice, met, organized and received from him the stock, appointed him attorney to receive the dividends and left the certificates with him as such attorney. The executor had the land surveyed and put the trustees in possession and control, and it has remained in their possession and control or that of their successors ever since. They took charge of the funds and they and their successors have as far as practicable invested the dividends in shares of the same company. They have prevented the erection of any building on said land and have prepared it as directed.

At the session of the General Assembly of the State of Vermont for 1878, a private law was enacted (No. 164), entitled "An Act to Incorporate the Bellows Free Academy of Fairfax and the Trustees thereof." By that act such persons as might thereafter associate themselves together as trustees of the Bellows Free Academy of Fairfax or might have been or should thereafter be chosen or appointed as such trustees by that town in pursuance of said will, and their associates and successors in office, were constituted a body politic and corporate by the name of The Bellows Free Academy of Fairfax, Vermont, with all the rights, privileges and powers belonging to similar corporations for the purpose of instructing pupils as provided in said will, and with power to sue and

be sued under the name aforesaid, and have a common seal. The corporation, or the trustees chosen by the town as required by the will, were empowered to make such by-laws, rules and regulations as were required by the terms of the will for the government of the corporation or said trustees, and their associates and successors, and for the establishment, control, endowment and government of the institution, and to take and hold by gift, grant, bequest, devise, purchase or otherwise property to any amount, the net annual income of which should not exceed $40,000, and to manage, control, use and dispose of the same for the benefit of the academy in a manner not inconsistent with, but in conformity to and in furtherance of, the provisions of said will. The corporation, or the trustees chosen by the town in accordance with the provisions of the will, or the town of Fairfax, were empowered to perpetuate the existence of the corporation or of the trustees and their associates and successors in office by the election of new trustees under the provisions of the will or otherwise, and the acts of the town done under or in pursuance of the provisions of the will were ratified and approved, and the town was empowered to carry out the provisions of the will.

This enactment was procured by Edward A. Sowles. The trustees elected by the town organized under the act and they and their successors in office elected by the town have maintained the organization, and the present trustees thus elected now constitute the same. They have made reports at each annual March meeting. The fund now consists of 1,348 shares of the capital stock of said railroad company, standing in the name of the town of Fairfax as trustee, and cash and other securities to about $18,000. The market value of the stock has fluctuated, but is now about $173 per share. It is probable that it will soon reach a point when a sale of it

will make the fund to amount to $250,000. Believing which, the academy and the trustees thereof at a meeting duly called for that purpose, unanimously instructed one of their number to sell the stock at not less than $175 per share, a price which would make the fund of the required amount. The agent went to New York to execute his commission, when he was prevented by a telegram from Mr. Sowles to the transfer agent of the company requesting the latter to decline the transfer until after a vote of the town. The agent returned to Vermont and waited upon Mr. Sowles to learn the reason for his action, and was informed of various objections and claims which are not recounted here, as for the most part they are not now insisted upon. To obviate the objection suggested in the telegram a town meeting was warned for the purpose of authorizing or confirming a sale of the stock, and electing an agent to carry it out; but the date for the meeting had not arrived when the bill was filed. If the sale is delayed the stock is likely to depreciate in market value, and it may be a long time before the fund will again reach the required amount.

The orators believe upon good reason that if not restrained by injunction the defendants will hinder and impede the sale, and therefore ask that they be temporarily enjoined from so doing, and that upon final hearing the injunction be made perpetual. A temporary injunction was granted.

In the Court of Chancery there was a *pro forma* decree overruling the demurrer and adjudging the bill sufficient, and the appeal is from that decree.

The substantial objections made under the demurrer are:

(1) That the trust was not accepted by the town.

(2) That the gift over to Margaret B. Sowles has become operative by reason of the act of incorporation and the proceedings of the trustees thereunder.

(3) That there was no right to sell the stock.

(4) That the bill is not in the name of the proper parties.

(1) As to the first point it is enough to say that we regard the vote already recited as a sufficient acceptance of the bequest upon the conditions contained in the will.

(2) Has the gift over become operative? The will vests the title to the land and the stock in the town of Fairfax. The town is the real trustee. The trust is to be administered through five officers or agents, called trustees, to be elected and qualified as the will prescribes, whose course of dealing is also to some extent laid down by the testator. If the will had been silent as to the persons through whom the trust was to be administered, the case would apparently have fallen under V. S. 3034-3037, which provides for the management of such property by the Trustees of Public Funds. As already stated, the stock has been kept in the name of the town and has been managed by the trustees in the town's name, just as the statute requires shall be done in the case of property in the hands of the Trustees of Public Funds. V. S. 3035.

What has the town done or permitted that constitutes a diversion of the property from its true use and legal control? It does not appear that the town had the act passed nor that anything has been done with the fund by the trustees except what they ought to have done by the terms of the will. No outsider has meddled with the trust property or interfered with its management. The trustees have given bonds and made reports as required by the will. It may be said that they have attempted to make use of the act of incorporation which the defendant, Edward A. Sowles, procured, as he now says, unlawfully and against the right of his wife. But the title to the property has never been transferred to the corporation, nor has any attempt been made to transfer it. It is

only the trustees elected by the town and duly qualified according to the will who have been associated together as the members of the corporation, and their decisions are alleged to have been unanimous. It may not be easy to point out any advantage in the act of incorporation, and we do not decide that it can be used at all in the administration of the trust. But neither is it easy to see what harm has yet been done or why the act should be treated as an attempt to divert the trust property until by reason of it, or in the name of it something has been done, or attempted, or left undone contrary to the provisions of the will.

(3) Neither do we see any merit in the claim that the trustees were attempting to divert the fund from the purposes of the trust in proceeding as they were to sell it at a price that would raise the fund to the amount it was required to reach before it could be used. The will does not mean that the fund shall be kept forever in the stock of the same railroad. To impute such an intention to the testator would be unreasonable and inconsistent with the language of the bequest. The requirement is that it shall be kept in that stock, as far as practicable, *until* it has reached $250,000. Thereafter, the intention evidently is that it shall be invested under the law pertaining to trust funds in general. The trustees were proceeding in strict performance of the testator's directions when they were obstructed by the defendants. It is the defendants, not the trustees, who are attempting to thwart his purpose.

(4) As to parties. The town is here seeking to carry out through its agents, selected as the will required, the trust reposed in it by the testator. As before remarked, the town is the real trustee. It is to the town's treasurer that the bonds are to be taken, and it is to the town the reports are to be made, and it is the duty of the town to oversee to some extent

the administration of the trust by its agents.   We entertain no doubt that it was a proper party to a bill brought as this was to insure the execution of the trust according to the testator's purpose.   The trustees, so called, elected by the town, have made oath to the bill one by one.   It is true that they also name themselves as the trustees of the academy corporation, and that the corporation itself is joined as a party, but the bill itself clearly shows that the town is behind the proceedings with the concurrent action of the officers who are to administer the trust, as well as the selectmen and the agent for prosecuting and defending suits, who have also signed and sworn to the bill in behalf of the town.   Whether the academy, or the trustees thereof under the act of incorporation, are proper parties to the bill, and whether the trustees have signed in proper form to make themselves orators in their capacity as trustees by the election of the town under the provisions of the will—these are questions which we do not consider important under this demurrer, for we have in the person of the town, acting through the officers aforesaid, a proper and sufficient party to the bill as an injunction bill to prevent threatened interference with the administration of the trust.

*Decree affirmed and cause remanded.*