Althea June Ball, Albert Brigham,
Aubrey Churchill, Grais Elaine
Churchill, Neil Winston Churchill,
Mary Brigham Fletcher, Bernard
Brigham Cogan, Elizabeth Genevieve
Cogan, Consuelo Northrop Bailey,
Dwight B. Huntley Owen, Frederika
Northrop Sargent, and Mary
Northrop Wallis

v.

Kenneth Hall, Rupert Hyde and
Richard Maynard, selectmen of the
Town of Bakersfield, Valentine
Bonk, Richard Maynard and Harrison
Doane, Trustees of the Public
Funds, Alcide Murcury, Jessie
Reed and Rupert Montague, District
School Directors; Jessie Reed,
Chancey Start and Harrison Doane,
Brigham Academy Committee, and
Robert Lemon, Town Agent; and
Attorney General, State of Vermont

[274 A.2d 516]

No. 51-70

Present: Holden, C.J., Barney, Smith and Keyser, JJ., and Larrow,
Supr. J.

Opinion Filed February 2, 1971

*Wick, Dinse & Allen,* Burlington, for Plaintiffs.

*Latham & Eastman,* Burlington, for Defendants.

*James M. Jeffords,* Attorney General, for the State.

**Holden, C.J.** The plaintiffs are the known heirs of Peter Bent Brigham and of his sister Sarah Brigham Jacobs. With this standing, they instituted this proceeding in equity to recover .by reversion and forfeiture certain gifts and bequests which were made by their ancestors to the Brigham School Fund now held by the defendants in trust for the use and benefit of Brigham Academy. The defendants are certain designated officers of the town and school district of Bakersfield. The attorney general of Vermont has been joined with them as a party to the action.

The plaintiffs, or some of them, are heirs of Sarah Jane Kendall and Roxana B. Hankinson who made gifts of property, real and personal, for the use of Brigham Academy. By way of an amendment to their petition for a declaratory judgment, they claim the reversion of lands conveyed by Roxana B. ·Hankinson to the defendants' predecessors in 1879 for the purpose of a high or central school.

The defendants' answer includes a prayer for the court's direction and approval to apply the income from the Brigham Fund for educational purposes generally for the benefit of the inhabitants of Bakersfield. They seek to use the fund for purposes which will approximate, as nearly as possible, the general charitable intentions of its donors.

Peter Bent Brigham was born in Bakersfield, Vermont, on February 4, 1807. At the age of nineteen he left Bakersfield on horseback to seek his fortune in Boston. From a meagre beginning in fish pedlary he achieved a position of wealth and prominence in real estate enterprises in the Boston area. Mr. Brigham died in that city on May 24, 1877.

His will provides specific bequests to certain named relatives and other persons, and establishes two charitable trusts. One is for the founding of the hospital in Boston which bears his name. The other is a bequest of thirty thousand dollars to the town of Bakersfield, with the direction that it "be invested as permanent fund, which shall be called the Brigham School Fund, and the income thereof shall be expended for educational purposes, either in the district schools, or for a school of higher grade, as the said Town shall from time to time determine."

The findings report that Sarah Brigham was Peter's youngest sister. She married James B. Jacobs in 1830 and they began their married life in Boston. This apparently was of short duration for she took up residence with her brother, serving as his housekeeper until his death. The subsequent fate and fortune of Sarah's husband is not made known in the record of this proceeding. The Jacobs' only child died early in life and is buried next to his mother and uncle in Cambridge, Massachusetts.

On January 12, 1878, Sarah Jacobs wrote to the town of Bakersfield and referred to her brother's bequest. Her letter stated:

"Desiring that the wishes of my brother be carried into effect I hereby promise said Town that if said income shall be appropriated for a High School and the said Town shall erect a suitable House, for the use and accommodation of such school, I will pay to said Town $5000. toward the cost of the erection thereof as follows—$2500.00 on the first of next May and $2500.00 upon the completion of said House; Provided the said Town will obligate itself to refund said sum with interest thereon from the time I shall make the payment—to me, my executors, administrators, or assigns, in case said income, or any part thereof shall ever be devoted to any use or purpose other than the

support and maintenance of a High School in said Bakers-
field."

Similar offers of $2,000 and $1,000 were tendered for the
same purpose and upon the same conditions by Sarah's nieces,
Sarah Jane Kendall and Roxana B. Hankinson.

At town meeting on February 7, 1878, the voters of Bakers-
field accepted the Brigham School Fund and resolved in accord-
ance with the terms of the trust "that we will always use
and expend the income therefrom for educational purposes
either in district schoolds (sic) or for a school of higher grade
as we shall from time to time determine."

In accepting the written proposal of Sarah B. Jacobs and
her nieces, the town voted to obligate itself to refund the
sums given with interest from the time of payment to the
donors' heirs or legal representatives, in case the income from
the bequest of Peter Bent Brigham "shall ever be devoted to
any use or purpose other than support and maintenance of a
High School in said Bakersfield."

Roxana B. Hankinson, by her quitclaim deed of May 16,
1879, conveyed a parcel to the town with the provision:

> "If said Town of Bakersfield shall ever use, occupy,
> or devote said land to any other use or purpose than for
> High or Central School building lots, to erect suitable
> boarding houses to be erected in connection with said
> School Buildings, suitable Out-buildings, School Grounds
> and Drive on and around said land for carriages. Then
> said land is to revert to me, my heirs and assigns at such
> time as said Town shall use, occupy or devote said land
> to any use inconsistent with the use and occupancy above
> provided for said land."

In 1882 and 1885 Mrs. Jacobs established funds to provide
scholarships at the University of Vermont for graduates of
Brigham Academy. The gifts provided that if Brigham
Academy should be discontinued or should fail to provide a
course of instruction sufficient to prepare students for college,
the income of the fund shall be available for the aid of students
other than the graduates of Brigham Academy.

Sarah B. Jacobs died November 24, 1891. Her last will, dated
October 6, 1891, was proved and allowed in the probate court
at Boston, Massachusetts. It provided for several specific

legacies of personal property and money to relatives and a servant. A bequest of $2,000 was made to the Home for Aged Colored Women. The residue was left to named trustees with directions for the establishment of a trust.

"The said Trustees shall collect the rents and income of said trust property and after the payment of all expenses shall pay over the net income thereof to the Town of Bakersfield, Vermont, annually for the period of twenty five years from the date of the probate of this will, to be used by said town for the support and benefit of said Brigham Academy, as a school of learning and education, or the support and benefit of another Brigham Academy as a school of education and learning which said Town may erect in place of the present one, or and enlargement of the present one, and for no other purpose whatever. .

"Should said town of Bakersfield erect another building for said Brigham Academy in place of the present one or enlarge the present one, then and in such case, the said Trustees are authorized to pay over out of the principal fund of the trust to said town towards the cost of erecting the new one or enlarging the present one, the sum of five thousand dollars and not otherwise.

"At the expiration of said period of twenty-five years the said trustees shall convey, transfer and deliver all the trust property in their hands prinicpal (sic) and income to the said town of Bakersfield in Vermont to be and only to be used, applied and most carefully expended for the support and benefit of said Brigham Academy as a school of learning and education, or another building for said Brigham Academy as a school of learning and education which may be erected by said town in place of the present one, or and enlargement of the present one.

"But this is upon the condition that at or within sixty days after the expiration of twenty-five years from the probate of my will, a majority of the legal voters of said town, shall in town meeting legally called and organized, vote to accept the same and to use the same for the purpose expressed herin (sic), and for no other purpose."

After the expiration of twenty-five years from the probate of the will, the town of Bakersfield, at a special meeting, voted

to accept the trust "on the terms and conditions provided by said Will and used for the purposes expressed therein, and for no other purpose . . . ."

The gifts and testamentary bequests made by the Brigham family have been combined in the Brigham Fund, which has been maintained separate from the general funds of the town. The principal of the trust on November 21, 1968, was $133,435.

Brigham Academy continued as a high school from the date of its founding in 1878 until the end of the school year in June 1966. At the annual town meeting on March 1, 1966, it was voted to close the academy for the 1966–1967 school year. The chancellor determined that the reason for the closing was that the town of Bakersfield could not afford to make the necessary improvements to meet standards imposed by the State of Vermont for secondary schools. The estimated cost of repairs necessary to meet the requirements of the State board of education ranged from $45,000 to $176,000. Since 1966 the academy building has been leased to the town school district as an elementary school at an annual rental of one hundred dollars.

During the years 1966 and 1967 the town school district expended some $31,000 from a checking account which contained, in part, income derived from the Brigham Fund. According to the findings "(t)he income from the Fund is not now being expended for educational purposes, and more particularly, for Brigham Academy or a high school in Bakersfield."

During 1969 forty-eight high school students in Bakersfield have attended other high schools in neighboring towns. The town of Bakersfield has paid the tuition and transportation costs of forty-three of the students attending outside schools.

The chancellor's findings report that it has been impossible to continue Brigham Academy as a high school since 1966. He regarded it unlikely that the institution will reopen as a secondary school.

On the strength of these facts the court ordered and adjudged that the residue of the estate of Sarah Brigham, in the amount of $100,000, revert to the heirs of the testatrix for breach of the conditions of the trust. It was further ordered that the land conveyed by Roxana B. Hankinson, by deed of

May 16, 1879, revert to the heirs of the grantor upon breach of the condition of the grant.

No disposition was made of the trust established by the will of Peter Bent Brigham. Similarly, the decree made no provision concerning the gifts of Sarah Brigham Jacobs, Sarah J. Kendall and Roxana B. Hankinson in the amounts of five, two and one thousand dollars respectively, which were donated to the town of Bakersfield in 1878.

Both sides of the controversy have appealed. The defendants, representing the town of Bakersfield, appeal and assign error to that portion of the decree which orders forfeitures of the Sarah B. Jacobs trust and the Hankinson grant. The plaintiff heirs appeal from court's failure to order payment to them of the *inter vivos* gifts of Sarah B. Jacobs, Sarah J. Kimball and Roxana B. Hankinson.

That the equity court did not disturb the trust created by the will of Peter Bent Brigham is not challenged in this appeal. However, we are concerned with the gifts and bequests established after the original trust and we will consider them in sequence.

The gifts of money made in 1878 by Sarah Brigham Jacobs and her nieces are similarly structured. They present common issues of fact and law. They originated in Mrs. Jacobs' offer to make a gift of $5,000.

In essence, the prospective donors offered to make certain gifts of money, subject to specified conditions. The funds were advanced in exchange for the town's twofold undertaking. The first aspect of the town's promise was to use the income from the Brigham Fund for the maintenance of a high school in Bakersfield. Secondly, the town agreed to refund the advances with interest from the date of its receipt in case the income from Mr. Brigham's bequest should ever be devoted to a different use or purpose. The happening of this event would transform the gift into a loan. Such was the contract of the parties. See 1S. Williston, Contracts § 25 (3d ed. W. Jaeger 1957).

The acceptance of the donors' offers obligated the town to repay the heirs in the event the gift should fail. The inclusion of the heirs in the town's acceptance was a slight variation from the offer but did not constitute a rejection of the gift. It became binding on the town when the monies were

advanced. See *Hill* v. *Bell,* 111 Vt. 131, 135, 11 A.2d 211 (1940) ; 1S. Williston, Contracts § 51, *supra.* The town's undertaking in this respect affords the plaintiffs adequate standing to claim restitution.

A gift may be conditioned upon the donee's performance of specified obligations or the happening of a certain event. *University of Vermont* v. *Wilbur,* 105 Vt. 147, 155, 163 A. 572 (1933) ; *Hackett* v. *Moxley,* 65 Vt. 71, 75, 25 A. 898 (1892) ; *Blanchard* v. *Sheldon,* 43 Vt. 512, 514 (1871). If the obligation is not performed, the donor is entitled to restitution. *Williamson* v. *Johnson,* 62 Vt. 378, 384, 20 A. 279 (1890) ; Restatement of Restitution § 58, comment b (1937) ; 28 Am.Jur.2d *Gifts* § 81. By the same token, an advance may be a loan, although the obligation to repay is contingent. See *Blanchard* v. *Sheldon, supra,* 43 Vt. at 514; *Old Colony Trust Co.* v. *Hassett,* 150 F.2d 179, 183 (1st Cir. 1945).

Contending that the contingency imposed by the donors in this instance will work an extreme hardship on the town, the defendants ask equitable relief from that consequence as with a forfeiture. The result of nonperformance of the town's undertaking is not a forfeiture in the true sense of the term. A forfeiture implies the loss of property previously owned without adequate compensation for the loss. 5S. Williston, Contracts § 781, *supra.* If an impending forfeiture will produce a severe hardship, and full compensation can be made to the claimant by the person against whom it is charged, courts of equity will generally grant relief. *Hagar* v. *Buck,* 44 Vt. 285, 291 (1872). See also, *Trudeau* v. *Lussier,* 123 Vt. 358, 365, 189 A.2d 529 (1963).

From the facts established by the findings, compensation can be made to the Brigham heirs only by repayment with reasonable interest for their use of the money. According to the undertaking of the defendants' predecessors in office, the town had the option of continuing performance or restitution. Since this was their agreement, the decree should have enforced the promise according to its terms. *Jackson* v. *Hunt,* 76 Vt. 284, 286, 56 A. 1010 (1904); 5S. Williston, Contracts, § 781 *supra.*

■ Next, in order of time, is the conveyance of the Dean land by the deed of Roxana B. Hankinson to the town of Bakersfield in 1879. This grant created a determinable fee

with the right to the reversion in the grantor and her heirs if the town "should ever use, occupy or devote said land to any other use or purpose than for a High or Central School . . . ." *Dickerman v. Town of Pittsford*, 116 Vt. 563, 565, 80 A.2d 529 (1951); *Collette v. Town of Charlotte*, 114 Vt. 357, 360, 45 A.2d 203 (1946).

It is conceded that the land is no longer used for a high school. However, the defendants contend that the present use of the academy for pupils in the lower grades constitutes use as a "central school" within the condition of the grant.

Referring the language of the deed to a contemporary statute relating to town school districts, it will be seen that towns were authorized "to establish and maintain one or more central schools for the education of advanced pupils of the several districts." No. 16 of the Acts of 1867 (G.S. 1870— App. p. 946). The chancellor's construction of the Hankinson grant is consistent with the statute and the condition of the grantor's monetary gift to the town of the preceding year. We find no error in the decree which declared a reversion of the land described in the Hankinson grant.

That is not to say that the buildings and other improvements revert with the fee. Nor should the defendants be called upon to remove said structures as fixtures within the decision in *Dickerman v. Town of Pittsford, supra*, 116 Vt. at 567. We think that the heirs can be adequately compensated by receiving the present fair market value of the bare land as though the reversion were taken by condemnation, as provided in 16 V.S.A. § 3781. A remand is necessary to accomplish this result and thus avoid a forfeiture of the buildings and improvements which the town has constructed and maintained these many years.

The testamentary trust established by Sarah Brigham Jacobs composes the final question for our review. The chancellor adjudged that the trust has failed for breach of conditions and orders that the principal, in the amount of $100,000, be paid over to the plaintiffs.

In substance and effect the chancellor has proclaimed the demise of Brigham Academy as a school of learning and education. And perhaps it can be said that the declaration of the decree that "there is no more a Brigham Academy" is sound in fact. It does not necessarily follow from that conclusion that

the trust must fail and the heirs of the testatrix are entitled to the trust property.

■ It seems quite clear that in 1878 Mrs. Jacobs intended that her property should be devoted to the support and benefit of Brigham Academy as a school of learning and education. But there is nothing in her will to indicate an intention that the trust should terminate and revert to her heirs in the event changing times and conditions should defeat her initial purpose. Absent such direction, the law presumes that if the benefactor had realized it would be impossible to carry out her first intention, she would have desired that the property be applied as nearly as possible to the initial purpose, rather than have the trust fail altogether. This is the established doctrine of our cases since *Executors of Burr* v. *Smith*, 7 Vt. 241, 307 (1835). And such is the mandate of our present statute. 14 V.S.A. § 2382 (The Model Act Concerning the Administration of Charitable Trusts, Devises and Bequests, 1945, No. 37 § 1). 4A. Scott, Trusts § 399 (3d ed. 1967); Restatement (Second) of, Trusts § 399 (1959).

The town of Bakersfield is the real trustee of Mrs. Jacobs' bequest. The defendants, as officers of the town, in seeking relief from the demand of strict performance, are acting to preserve the trust reposed in them by the settlor. *Bellows Free Academy* v. *Sowles*, 76 Vt. 412, 420, 57 A. 996 (1904). And although the primary objective of the trust may now be impossible, relief will be granted if the record indicates the settlor entertained a general charitable intent at the time her will was executed.

The fact that the terms of the trust specify the primary objective "and for no other purpose" does not preclude a more general charitable intention on the part of the settlor. *Town of South Kingston* v. *Wakefield Trust Co.*, 48 R.I. 27, 134 A. 815, 48 A.L.R. 1122, 1124 (1926); Restatement (Second) Trusts § 399, comment c. And the absence of any provision for forfeiture or reverter is persuasive that the testatrix did not anticipate her charitable purpose would fail. *Wilbur* v. *University of Vermont*, 129 Vt. 33, 270 A.2d 889, 897 (1970); *Middlebury College* v. *Central Power Corporation of Vermont*, 101 Vt. 325, 341, 143 A. 384 (1928). The same inference arises from the absence of provision for a gift over in the

event the purpose specified in the will should become impractical or impossible to perform. *Miller* v. *Mercantile-Safe Deposit & Trust Co.*, 224 Md. 380, 168 A.2d 184, 189 (1961) ; *Town of Brookline* v. *Barnes,* 324 Mass. 632, 87 N.E.2d 843, 846 (1949).

These principles apply with particular emphasis and indication as to Mrs. Jacobs' intentions. She was entirely familiar with the broader charitable purpose of her brother's will. She referred to the option which he gave the town in her letter tendering the gift of $5,000 in 1878, before her will was executed. Yet she expressly conditioned her gift to restrict the use of the income of his trust to her own particular purposes by providing for repayment of the gift if the income from that trust should be used for any purpose other than the support of a high school. Her subsequent trust for the benefit of Brigham Academy imposed no such restriction. And unlike her gift, the will makes no provision to benefit her estate in the event her initial purpose should be frustrated.

The testatrix knew how to provide for a reversion and forfeiture. She also understood how to provide for a gift over, as she did in establishing the scholarship fund for the Brigham graduates. The absence of such provision in the disposition of her residuary estate is a strong indication that she desired the benefit to the town and its advanced students to continue if her more exact purpose should become impossible. *Rogers* v. *Attorney General,* 347 Mass. 126, 196 N.E.2d 855, 861 (1964) ; *Petition of Rochester Trust,* 94 N.H. 207, 49 A.2d 922 (1946). Further indication of a general charitable interest is found in the fact that the bulk of her estate was bequeathed for charitable purposes. *Miller* v. *Mercantile-Safe Deposit & Trust Co., supra,* 168 A.2d at 189.

We conclude that the object of the trust was the advancement of higher education of the young people in the town of Bakersfield. Such was the design upon which the Brigham School Fund was founded and Sarah Brigham Jacobs sought to perpetuate that purpose. This is so even though the method of accomplishing that purpose by necessity may differ from the special purpose stated in her will. *Attorney General ex rel. Town of Fair Haven* v. *Briggs,* 164 Mass. 561, 42 N.E. 118, 119 (1895).

There are compelling reasons for adapting the scheme of charitable trust to meet the demands of changing circum-

stances and conditions. Even though personal gratification of the donor may have had a part in the establishment of the trust, such a subordinate purpose must yield.

And as the Supreme Judicial Court of Massachusetts recently stated by Justice Cutter, " . . . (a) donor who brings into existence a charitable institution must recognize that most institutions are likely to change with time, that they will become sterile if they remain static, and that they must be adaptable to new public considerations and unpredictable economic circumstances." *Trustees of Dartmouth College* v. *City of Quincy,* 258 N.E.2d 745, 753 (Mass. 1970).

The State affords various privileges and immunities to a donor who is inspired to establish a charitable trust which are not available to trusts for private uses. Not the least of these is the release from the rule against perpetuities and various tax advantages. Such concessions are founded on the belief that the public interest derives substantial benefit from such creations. But as Professor Scott points out, "(t)he public interest is not promoted by the creation of a charity which by the lapse of time ceases to be useful. 4A. Scott, Trusts § 399.4, at 3124, *supra.*

The public in general, and the townspeople of Bakersfield in particular, have shared an interest with the founder of the trust in the survival of its general charitable purpose. Although her purpose may have been restrictive when she wrote her will, provisions no longer valid must be measured in the light of her general charitable objectives and the requirements of contemporary conditions. *Trustees of Dartmouth College* v. *City of Quincy, supra,* 258 N.E.2d at 753.

We hold those interests are worthy of the protection in equity by application of the doctrine of *cy pres* as expressed in 14 V.S.A. § 2328. The ascertainment of the proper class of beneficiaries and the appropriate variant use require the presentation of a design to be directed and approved by the court. *Clement* v. *Hyde,* 50 Vt. 716, 721 (1878); *Rogers* v. *Attorney General, supra,* 196 N.E.2d at 861. We think the plan which the defendants propose should be more specific than merely "educational purposes generally which will benefit members of the Town of Bakersfield . . . " as proposed in the cross petition. Upon proper presentation, the court of chancery should order the administration of the trust as nearly as

possible to fulfill the general charitable intention of the testatrix.

*Decree reversed and cause remanded for further proceedings consistent with the opinion of the Court.*