James Emmet Tower Memorial Fund, Inc. v. The Rutland Hospital, Inc., Vermont Catholic Charities, Inc., Rutland Missionary Association, and James M. Jeffords, Attorney General

[340 A.2d 54]

No. 61-74

Present: Barney, C.J., Daley and Larrow, JJ., and Shangraw, C.J. (Ret.), Assigned

Opinion Filed June 3, 1975

*V. J. Loveland, Esq.*, Rutland, for Plaintiff.

*Bloomer & Bloomer*, for Rutland Missionary Association; *Ryan, Smith & Carbine, Ltd.*, for the Rutland Hospital, Inc.; *Sullivan & McCaffrey*, for Vermont Catholic Charities, Inc., Rutland.

**Larrow, J.** The plaintiff Fund, a Vermont charitable corporation, brought action in the Rutland Superior Court under 14 V.S.A. § 2328, setting forth, without dispute, that circumstances have rendered its charitable trust impracticable of enforcement, and seeking a *cy pres* distribution of its funds to other organizations. After making extensive findings, the trial court ordered such distribution in equal shares to The Rutland Hospital, Inc. (Hospital), Vermont Catholic Charities, Inc. (Loretto Home) and Rutland Missionary Association (Sunset Home). Joined as required by statute, the Attorney General did not appear or participate, either here or below. Sunset Home has appealed, claiming the Hospital ineligible. The Hospital made a like claim below with respect to Sunset Home, but has not appealed. Loretto Home did not appeal, and its status as beneficiary under the *cy pres* declaration is not here challenged.

The will of Dr. James Emmet Tower contained a bequest "for the purpose of founding and supporting a Home for Old Men and Women at the City of Rutland." One half was to be used for founding, the other half for supporting, the Home. A 1953 decree of the Surrogate's Court of New York County decreed the sum involved to the plaintiff, a corporation formed for the purpose, with the "understanding" that the net income would be divided equally among the three corporate defendants. The details of this "understanding" are not found, but past distributions are not challenged by any of the parties. Neither is the alleged impracticality of continuing the trust.

Dr. Tower's will, in addition to the quoted bequest, also contained a separate specific bequest to the Hospital for the maintenance of a free bed in memory of his parents. This fact was not specifically found below, but is conceded by the parties.

The essential thrust of appellant's argument here is that the Hospital does not qualify as a "home" for the aged, as a matter of law, and that the testator's specific legacy to it indicates, to some degree, that he also did not consider it in that light. We agree.

The findings below are quite extensive, and unchallenged, with respect to the functions of the hospital. As found by the trial court, it is a licensed public hospital, treating annually over 2000 patients over 65 years of age, admitting them even if unable to pay. Forty-eight per cent of its patient day care goes to treating persons over 65. Over a six year period, unpaid bills for persons over 65 exceeded $18,300.00. It has a Utilization Review Committee whose function it is to make certain that patients, including the elderly, are timely discharged.

To the extent found, the Hospital certainly performs some charitable functions with respect to the aged. But that is not the question here involved. Many institutions and organizations are equally, perhaps more, charitable toward the older age group. The flaw in the reasoning of the trial court is that, however charitable, the activities of the Hospital are not directed toward the providing of a "home", in either the legal or popular sense. Some of its officials, on cross-examination, virtually conceded as much.

Application of the property as nearly as possible to the original intention of the testator is required when the *cy pres* doctrine comes into play. *Ball* v. *Hall,* 129 Vt. 200, 274 A.2d 516 (1971). We therefore examine the connotations of the word "home".

In its legal sense, as well as its popular acceptance, the term implies a vital element completely lacking in the usual operation of a hospital. Legally it implies a dwelling place, to which, when absent, a person intends to return. *Cf.* Black's Law Dictionary 866 (4th ed. 1951). In classic legal terms, this is the "animus manendi" long regarded as an element of domicil.

Such is not the purpose, or the operation, of the Hospital. To the contrary, as found, it endeavors to treat and speedily discharge those aged for whom it provides patient care, while the other defendants are places from which they come to the Hospital, and to which they return upon discharge therefrom. However commendable its charitable operations, the Hospital does not provide a "home". It is not "where the heart is" that the writer speaks of; it does not provide the "heap o' living" that the poet writes about; and a stay there is without the animus manendi that the law requires. It might be, as the Hospital argues, that a decree to it would meet general legal requirements if the original object of the testator had failed completely. But such is not here the case, because the other defendants are providing the very type of care that he contemplated. The failure of the trust is because of size and legal and administrative difficulties, not because the specific type of care intended cannot be provided in the Rutland area.

Not exactly in point, but certainly applicable by analogy are the holdings of this Court as to the liability of towns, under former statutes, for care furnished to transient persons. In interpreting those statutes, it was expressly held that a general hospital was a "house" within the meaning of the statute, and that a person confined to it was a transient, precisely because when so confined he was away from his "home". *St. Albans Hospital* v. *City of St. Albans*, 107 Vt. 59, 176 A. 302 (1935).

Further, while far from determinative, we consider that making a separate bequest to the Hospital in another part of his will is some indication that the testator did not consider it as a home for the aged within his general charitable intent for that purpose.

It is not here claimed that the "understanding" under which trust income had been divided among the three defendants equally is binding upon the parties, or the public generally. Whatever the status of that "agreement" it does not seem to have covered distribution of the trust corpus, the issue in this case. Nor was res adjudicata either pleaded or urged below. We recognize the general principle contended for by the Hospital, to the effect that there is wide discretion in the trial court and the scope of appellate review is narrow. *Lemon* v. *Kurtzman,*

411 U.S. 192 (1973). As we pointed out, had the testator's original objective become impossible of fulfillment, the decree below might well be sustained as to the Hospital, because it provides general charitable care, to some degree at least, to the aged. But that is not the impossibility here in issue; the other defendants are providing the type of care contemplated, not just charitable relief.

The trial court erred in including the defendant Hospital in its *cy pres* decree. The cause must be reversed and remanded for correction of the judgment order in this particular.

*Judgment reversed and cause remanded. The trial court is directed to revise the judgment order below by striking from Paragraph 2 thereof any reference to The Rutland Hospital, Inc.*