# Equitable Transfers of Forfeited Monies or Property

When the federal government makes an equitable transfer of forfeited monies or property to a state or local law enforcement agency, that transfer is more appropriately characterized as a conditional gift to the agency rather than as a formal contract between the federal government and the agency.

If the state or local agency fails to use the transferred property for law enforcement purposes, the federal government may be able to pursue restitution of the property.

April 19, 1994

MEMORANDUM OPINION FOR THE DIRECTOR AND CHIEF COUNSEL
EXECUTIVE OFFICE FOR ASSET FORFEITURE

You have requested our assistance in determining whether equitable transfers of forfeited property to state and local law enforcement agencies should be viewed as contracts or as conditional gifts. Pursuant to 21 U.S.C. § 881 and 19 U.S.C. § 1616a, the Attorney General has the authority to share forfeited monies or tangible property with any state or local law enforcement agency which participated directly in the investigative or prosecutorial efforts leading to the seizure and forfeiture of the property. The local agency wishing to share in the forfeited property must apply by submitting an "Application for Transfer of Federally Forfeited Property — Form DAG-71" ("DAG-71") within sixty days of the seizure. *See A Guide to Equitable Sharing of Federally Forfeited Property for State and Local Law Enforcement Agencies*, December 1990, at 3 ("Guide"). Both the shared property and any income generated from it *"must* be used for the law enforcement purposes" specified by the requesting agency in its DAG-71 form. *Id.* at 4; *see also The Attorney General's Guidelines on Seized and Forfeited Property*, July 1990, at 8 ("Guidelines").[1] Permissible law enforcement purposes include, but are not limited to, the purchase of vehicles, weapons, or protective equipment and the payment of salaries and other expenses. Guide at 4.

The question about the appropriate characterization of equitable transfers has arisen because of the failure of some local agencies to comply with the Guidelines. Specifically, a 1992 audit by the Inspector General revealed that some agencies have failed to use transferred monies and property for permissible law enforcement purposes. The General Counsel of the Office of the Inspector General concluded that the Justice Department could seek to recover these misspent monies through restitution because the equitable transfer created a contractual relationship.[2] *See*

---

[1] Both the DAG-71 form and its accompanying instructions also state that all assets transferred must be used for the law enforcement purpose specified in the request.

[2] The General Counsel also concluded that the Department could act to preclude future disbursements to an agency misusing funds. The availability of this remedy has not been questioned

Memorandum for Guy Zimmerman, Assistant Inspector General for Audit, from Howard L. Sribnick, General Counsel, Office of the Inspector General (Sept. 9, 1992). The Executive Office of Asset Forfeiture, however, has stated that it is more inclined to view equitable transfers as conditional gifts rather than contractual relationships and thus believes the Department is powerless to seek restitution of transferred funds. *See* Memorandum for Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, from Cary H. Copeland, Director and Chief Counsel, Executive Office for Asset Forfeiture (Dec. 17, 1993).

We believe that the equitable transfers at issue here are more analogous to a conditional gift than to a formal contractual relationship. Although it is true that the Guide states that the DAG-71 should be "treated as a contract" between the requesting agency and the Department of Justice, *see* Guide at 4, we believe that this language is better read as signifying that the conditions placed on the transfer are binding on the local agency rather than as creating a formal contract. A formal contract is not created for three reasons. First, the language of both the Guide and the Guidelines suggests that the intent of the program is to reward local law enforcement agencies for their valuable past assistance in securing the property, rather than to create a bargained-for exchange of the agency's promise to use the money for law enforcement in return for a share in the forfeited property. For example, the amount of the equitable share awarded depends in part on the degree of direct participation in the law enforcement effort by the local agency and on whether the local agency provided unique or indispensable assistance. Guidelines at 9. A promise to reward past conduct is not sufficient to create a contract under settled principles of contract law. *Restatement (Second) of Contracts* § 86 (1981). Second, the absence of bargained-for legal detriment on the part of the requesting agency suggests that the relationship created is that of a conditional gift rather than a formal contractual relationship. Even though the requesting agency promises not to use the money for any purpose other than that specified in the request, this is not an example of a promise not to do something the agency would otherwise have the right to do. Finally, neither the DAG-71 form nor the Guidelines suggest that the federal government is ever bound to make the requested transfer. *See, e.g.*, Guidelines at 1 (Guidelines are not intended to create any rights on behalf of claimants or petitioners).

It is also our belief, however, that the conclusion that an equitable transfer is a conditional gift does not necessarily preclude the federal government from seeking restitution of transferred funds being used for non-law-enforcement purposes. As an initial matter, it is clear that a promise to use the transferred property for

---

[3] The legislative history of the amendments to 21 U S C. § 881 and 19 U S C § 1616a also makes plain that the purpose of allowing the Attorney General to transfer funds to local agencies was to recognize the assistance of those agencies in securing the forfeiture and to enhance cooperation between local and federal law enforcement agencies H R Rep. No 98-1030, at 216, 219 (1984), *reprinted in* 1984 U S C C A N 3182, 3399, 3402

law enforcement purposes is in fact a condition of receiving an equitable share from the federal government. *See, e.g.,* DAG-71 (requiring requestor to certify that property will be used for law enforcement purpose stated); Guidelines at 8 (stating that all property transferred shall be used for law enforcement purposes). The DAG-71 further reinforces the interest of the federal government in ensuring that the money is used for law enforcement purposes by requiring the local agency to certify that it will report on the actual use of equitably shared property upon request. In addition, the Guidelines make plain that "the integrity of the entire forfeiture program depends upon the faithful stewardship of forfeited property and the proceeds thereof." Guidelines at 1. Permitting local agencies to use the proceeds of forfeited property for any purpose whatsoever would undermine the integrity of the program.

The fact that the Department has placed such a clear condition on the use of funds received under the equitable sharing program and has reserved the right to confirm that an agency uses transferred funds as promised suggests that the Department did not intend to pass unconditional control of the funds to the local agency. Instead, it appears that the Department intended to make a conditional gift, which remains in effect only so long as the gift is being used for its intended purpose. "A gift may be conditioned upon the donee's performance of specified obligations . . . If the obligation is not performed, the donor is entitled to restitution." *Ball v. Hall,* 274 A.2d 516, 520 (Vt. 1971). In the analogous context of federal grants to state and local agencies, courts have stated that the federal government may use principles of restitution to recover monies that were granted for specific purposes and then used in contravention of those purposes, even in the absence of statutory authority expressly permitting such recovery. *See, e.g., West Virginia v. Secretary of Educ.,* 667 F.2d 417, 419 (4th Cir. 1981) (per curiam); *Mount Sinai Hosp. v. Weinberger,* 517 F.2d 329 (5th Cir. 1975), *cert. denied,* 425 U.S. 935 (1976). *But see* 2 Richard B. Cappalli, *Federal Grants and Cooperative Agreements* § 8:15, at 80-82 (1982) (suggesting that federal agency may have forfeited its right to recover improperly used funds if it has not established a right to recovery in the grant agreement or in duly promulgated regulations). Restitutionary remedies are available because, although not a formal contractual relationship, federal grant programs are nonetheless "much in the nature of a contract: in return for federal funds, the [grantee] agree[s] to comply with federally imposed conditions." *Pennhurst State School v. Halderman,* 451 U.S. 1, 17 (1981).

Whether to pursue restitution against local agencies misusing funds transferred to them under the equitable sharing program is a policy question not suited for

---

[4] The Supreme Court has not yet resolved the question whether the federal government has a common law right to recover funds whenever a grant recipient fails to comply with the conditions of the grant. *Bell v. New Jersey,* 461 U.S. 773, 782 n 7 (1983)

resolution by this office. We mean to suggest only that a right to recover misspent funds on a restitution theory may well be supportable under current case law.

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*